1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                       February 2007 Grand Jury

CR 09 00081

11   UNITED STATES OF AMERICA,     )  CR No. 09-
                                   )
12                 Plaintiff,      )
                                   )  I N D I C T M E N T
13           v.                    )
                                   )  [18 U.S.C. § 1956(h): Conspiracy
14   JUTHAMAS SIRIWAN,             )  To Money Launder; §1956(a)(2)(A):
        aka "the Governor," and    )  Transporting Funds to Promote
15   JITTISOPA SIRIWAN,            )  Unlawful Activity; 18 U.S.C. § 2:
        aka "Jib,"                 )  Aiding and Abetting and Causing
16                                 )  an Act To Be Done; 18 U.S.C.
                 Defendants.       )  § 982(a)(1), 21 U.S.C. § 853, 28
17                                 )  U.S.C. § 2461(c): Criminal
                                   )  Forfeiture]
18                                 )
                                   )
19   _____   )

20   The Grand Jury charges:

21                      INTRODUCTORY ALLEGATIONS

22        At all times relevant to this Indictment:

23   A.   THE FOREIGN CORRUPT PRACTICES ACT

24        1.   The Foreign Corrupt Practices Act of 1977 ("FCPA"), as

25   amended, Title 15, United States Code, Sections 78dd-1, et seq.,

26   was enacted by Congress for the purpose of making it unlawful,

27   among other things, for certain United States persons and

28   business entities defined as "domestic concerns" to act corruptly

BHS:bhs
JEL:jel

in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of securing any improper advantage, or of obtaining or retaining business for and with, or directing business to, any person.

B.   PUBLIC CORRUPTION OFFENSES UNDER THAILAND'S PENAL CODE

2.   Under Section 149 of Thailand's Penal Code, it is unlawful for any government official of the Kingdom of Thailand ("Thailand") to accept property or any other benefit for exercising or not exercising any of her official functions.

3.   Under Section 152 of Thailand's Penal Code, it is unlawful for any government official, having the duty of managing or looking after any activity, to take the interest for the benefit of herself or another person concerning such activity.

C.   RELEVANT PERSONS AND ENTITIES

4.   The Tourism Authority of Thailand (the "TAT") was a government agency of Thailand.  The TAT administered and funded contracts to promote tourism in Thailand, including the annual Bangkok International Film Festival ("BKKIFF"), public relations services, a logo for the TAT, and websites, calendars, and videos featuring Thailand.  The TAT had a yearly budget equivalent to millions of United States dollars to disburse for the operations of the BKKIFF, and smaller amounts to fund other TAT contracts. The TAT also controlled an entity that was an instrumentality of the Thai government, namely, the Thailand Privilege Card Co., Ltd. (the "TPC LTD").  The TPC LTD administered and funded contracts for consulting, creative design, public relations, and promotional books for an "elite privilege card" for foreigners.

2

5.    Defendant JUTHAMAS SIRIWAN, also known as ("aka") "the Governor," was the senior government officer of the TAT from in or about 2002 until in or about 2006.  Defendant JUTHAMAS SIRIWAN was responsible for the selection of the businesses that would provide goods and services to the TAT, and to which the disbursement of TAT and TPC LTD funds would be made.  As an officer and employee of a department, agency, and instrumentality of a foreign government, defendant JUTHAMAS SIRIWAN was a "foreign official" as that term was defined in the FCPA. Defendant JUTHAMAS SIRIWAN also was a government official subject to the anti-corruption provisions of Sections 149 and 152 of Thailand's Penal Code.  From in or about late 2006 to in or about 2007, defendant JUTHAMAS SIRIWAN, although no longer in her prior position at the TAT, acted in an official capacity on behalf of the TAT as an "advisor," and therefore was still a "foreign official" as that term was defined in the FCPA.

6.    Defendant JITTISOPA SIRIWAN, aka "Jib," was a Thai citizen and the daughter of defendant JUTHAMAS SIRIWAN.  In or about 2004, defendant JITTISOPA SIRIWAN was also an employee of the TPC LTD.

7.    The person referred to herein as the "Friend" was a Thai citizen and a friend of defendant JUTHAMAS SIRIWAN.

8.    Co-conspirator Gerald Green was a naturalized citizen of the United States.  As a citizen of the United States, co-conspirator Gerald Green was a "domestic concern" as that term was defined in the FCPA.  Co-conspirator Gerald Green obtained business for, and negotiated contracts on behalf of, various business entities located in the Central District of California,

3

1  collectively referenced in this Indictment as the "Green
2  Businesses."
3      9.   Co-conspirator Patricia Green was a naturalized citizen
4  of the United States.  As a citizen of the United States, co-
5  conspirator Patricia Green was a "domestic concern" as that term
6  was defined in the FCPA.  Co-conspirator Patricia Green was the
7  wife of co-conspirator Gerald Green.  Co-conspirator Patricia
8  Green managed the Green Businesses' day-to-day operations, and
9  was primarily responsible for approving expenses, signing checks,
10  and wiring funds from the bank accounts of the Green Businesses.
11      10.  The Green Businesses included the following California
12  corporations and unincorporated businesses that co-conspirators
13  Gerald Green and Patricia Green owned and operated in Beverly
14  Hills, California:  Film Festival Management, Inc. ("FFM"); SASO
15  Entertainment ("SASO"); Artist Design Corp. ("Artist Design");
16  International Fashion Consultant, Inc. ("IFC"); Flying Pen, Inc.
17  ("Flying Pen"); and entities doing business as "Creative
18  Ignition," "Ignition," and "International Festival Consultants."
19  The Green Businesses also included Festival of Festivals ("FOF"),
20  a business entity belonging to an associate of co-conspirators
21  Gerald Green and Patricia Green, but in the name of which co-
22  conspirators Gerald Green and Patricia Green did business and
23  received and transferred funds.  As entities that had their
24  principal places of business in California, and that were
25  organized under the laws of a State of the United States, the
26  Green Businesses were "domestic concerns" as that term was
27  defined in the FCPA.  The Green Businesses were used as vehicles
28  to help obtain contracts and subcontracts to provide goods and

4

services for media and entertainment projects to the government
of Thailand.

D.   OVERVIEW OF TAT/TPC LTD CONTRACT REVENUES, CORRUPT PAYMENTS

11.   Beginning in or about 2002, and continuing to in or
about 2007, co-conspirators Gerald Green and Patricia Green,
through several of the Green Businesses, received at least
$14,000,000 of TAT and TPC LTD funds in connection with work
performed on TAT and TPC LTD contracts, whether as a prime
contractor or subcontractor.   During that same time period, co-
conspirators Gerald Green and Patricia Green sent and caused to
be sent at least $1,800,000 of those funds from the bank accounts
of the Green Businesses in the Central District of California to
bank accounts held in the name of either defendant JITTISOPA
SIRIWAN or the Friend at banks in Singapore, the United Kingdom,
and the Isle of Jersey, all for the benefit of defendant JUTHAMAS
SIRIWAN.   Most of these transfers were via international wire
transfers; some were by cashiers checks.   Co-conspirator Gerald
Green also, on occasion, delivered cash to defendant JUTHAMAS
SIRIWAN in person.

12.   Co-conspirators Gerald Green and Patricia Green caused
these corrupt payments, paid to and for the benefit of defendant
JUTHAMAS SIRIWAN, in order to secure the lucrative TAT and TPC
LTD contracts and subcontracts.   These payments were disguised on
the Green Businesses' books and records and tax returns as
"commissions" in order to conceal the nature of the payments.

13.   Defendants JUTHAMAS SIRIWAN and JITTISOPA SIRIWAN
failed to report any of these payments from the Green Businesses
on their individual Thai income tax returns.

E.   INCORPORATION BY REFERENCE

　　　14.   These introductory allegations are re-alleged and incorporated into each count of this Indictment.

COUNT ONE

[18 U.S.C. § 1956(h)]

A.   OBJECTS OF THE CONSPIRACY

15.   Beginning in or around 2002, and continuing to in or around 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants JUTHAMAS SIRIWAN and JITTISOPA SIRIWAN, together with co-conspirators Gerald Green and Patricia Green, and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to transport, transmit, and transfer monetary instruments and funds from a place in the United States to a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2(a)(1); bribery of a public official of Thailand, in violation of Section 149 of Thailand's Penal Code; and the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official, in violation of Section 152 of Thailand's Penal Code, all in violation of Title 18, United States Code, Section 1956(a)(2)(A).

B.   THE MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

16.   Co-conspirators Gerald Green and Patricia Green would and did offer and pay bribes, directly and indirectly, to and for the benefit of defendant JUTHAMAS SIRIWAN in exchange for the award of lucrative TAT and TPC LTD contracts and subcontracts to and for the benefit of the Green Businesses.

7

17.   Co-conspirator Gerald Green and defendant JUTHAMAS SIRIWAN would and did agree to the total amount of money that the TAT and the TPC LTD would and did pay to the Green Businesses. Co-conspirator Gerald Green and defendant JUTHAMAS SIRIWAN would and did also agree to the amount of the corrupt payments to be paid to defendant JUTHAMAS SIRIWAN as a percentage, ranging between 10% and 20%, of the value of such contracts.   On occasion, the negotiated contracts between co-conspirator Gerald Green and defendant JUTHAMAS SIRIWAN involved third-party businesses that served as prime contractors with the TAT or the TPC LTD, and the Green Businesses as subcontractors.   On such occasions, which included contracts for website production, public relations services, calendars, and video production, co-conspirator Gerald Green would and did structure the contracting arrangements so that the prime contractors would pass through to the Green Businesses in the subcontracts the amounts necessary for the Green Businesses to fund corrupt payments to defendant JUTHAMAS SIRIWAN.

18.   Defendants JUTHAMAS SIRIWAN and JITTISOPA SIRIWAN would and did open bank accounts held in defendant JITTISOPA SIRIWAN's name in the United Kingdom, the Isle of Jersey, and Singapore for the receipt of the corrupt payments from the Green Businesses. On account opening applications, defendant JITTISOPA SIRIWAN would and did conceal that the funds to be deposited into the accounts would be for the benefit of her mother, defendant JUTHAMAS SIRIWAN, and that her mother was a senior Thai government official.

8

19.   Defendant JUTHAMAS SIRIWAN would and did provide co-conspirator Gerald Green with wire instructions to make transfers of the corrupt payments to the accounts held in defendant JITTISOPA SIRIWAN's name in the United Kingdom, the Isle of Jersey, and Singapore.  Co-conspirator Gerald Green would and did then provide these wire instructions to co-conspirator Patricia Green.  Co-conspirators Gerald Green and Patricia Green would and did also maintain in their offices bank statements from overseas accounts of defendant JITTISOPA SIRIWAN and the Friend.

20.   Defendant JUTHAMAS SIRIWAN had authority to approve TAT payments to foreign entities up to a certain value.  Therefore, at defendant JUTHAMAS SIRIWAN's direction, co-conspirators Gerald Green and Patricia Green would and did split up the performance of large contracts for the BKKIFF among different Green Businesses.

21.   To create the appearance of separate and distinct businesses, co-conspirators Gerald Green and Patricia Green would and did cause the Green Businesses to use different bank accounts, mailing addresses, and telephone numbers in their dealings with the TAT.  Some of these entities and bank accounts would be and were established solely for business with the TAT in connection with the BKKIFF.  However, in reality, all of the BKKIFF work would be and was managed by the same personnel out of the same Beverly Hills business offices at the direction of, and to benefit, co-conspirators Gerald Green and Patricia Green.

22.   By the above-described use of numerous different business entities in structuring contracting and subcontracting for TAT and TPC LTD business, defendant JUTHAMAS SIRIWAN and co-

conspirators Gerald Green and Patricia Green would and did evade
requirements for higher level approvals and conceal from further
scrutiny and suspicion by other Thai government officials the
large sums of TAT and TPC LTD funds flowing to the Green
Businesses, a portion of which would be and was for the benefit
of defendant JUTHAMAS SIRIWAN.

23. Co-conspirators Gerald Green and Patricia Green would
and did prepare and submit, and cause others to prepare and
submit, to the TAT and the TPC LTD statements of the scope of
work and the costs for the various services in connection with
the contracts. Co-conspirators Gerald Green and Patricia Green
would and did inflate the cost amounts submitted to the TAT and
the TPC LTD to include the anticipated corrupt payments to
defendant JUTHAMAS SIRIWAN, in addition to the Green Businesses'
and any prime contractors' actual costs and profits.

24. Following the Green Businesses' receipt of payment for
work performed on TAT and TPC LTD contracts into their Los
Angeles-area bank accounts, co-conspirator Gerald Green would and
did advise defendant Patricia Green when a "commission" payment
was needed for defendant JUTHAMAS SIRIWAN. Co-conspirator
Patricia Green and another employee at the Green Businesses would
and did then look to see which of the Green Businesses had the
money available for payment.

25. Co-conspirators Gerald Green and Patricia Green would
and did arrange for the corrupt payments to be made, for the
benefit of defendant JUTHAMAS SIRIWAN, via international wire
transfer or cashiers checks from the bank accounts of one or more
of the Green Businesses in the Los Angeles area to bank accounts

10

held in the name of defendant JITTISOPA SIRIWAN or the Friend at banks in the United Kingdom, Singapore, and the Isle of Jersey. Defendant JUTHAMAS SIRIWAN would and did direct which bank accounts should be used to receive the transfers.  Co-conspirators Gerald Green and Patricia Green would and did also occasionally arrange for cash payments to be made directly to defendant JUTHAMAS SIRIWAN, including during her trips to Los Angeles, California.

26.  Co-conspirator JITTISOPA SIRIWAN would and did receive into her account in Singapore transfers from the account of the Friend in Singapore, in approximately the same amount as the "commissions" for the Governor that the Green Businesses had earlier transferred to the account of the Friend, plus interest.

27.  Co-conspirator Patricia Green would and did maintain spreadsheets created by an employee at the Green Businesses that calculated and tracked the corrupt payments made to and for the benefit of defendant JUTHAMAS SIRIWAN in connection with TAT and TPC LTD contracts.

28.  In return for the corrupt payments characterized as "commissions," defendant JUTHAMAS SIRIWAN would and did assist co-conspirators Gerald Green and Patricia Green in securing lucrative contracts and subcontracts for TAT and TPC LTD business.

29.  Defendants JUTHAMAS SIRIWAN and JITTISOPA SIRIWAN would and did conceal the receipt of the corrupt payments by failing to report them on their individual Thai income tax returns as income.  Co-conspirators Gerald Green and Patricia Green would and did deduct the corrupt payments on the Green Businesses'

1   United States income tax returns, but would conceal their true

2   nature by referring to them as "commissions" in the costs of

3   goods sold.

4       30.   After defendant JUTHAMAS SIRIWAN stepped down in or

5   about September 2006 as the TAT's highest-ranking official and

6   became an "advisor" to the TAT, she would and did continue to

7   assist co-conspirators Gerald Green and Patricia Green in

8   obtaining and retaining business with the TAT, including in

9   receiving payment of outstanding amounts due.   Defendant JUTHAMAS

10  SIRIWAN would continue to receive a portion of the money paid to

11  the Green Businesses by the TAT.

12  C.   OVERT ACTS

13      31.   In furtherance of the conspiracy and to accomplish its

14  objects, defendants JUTHAMAS SIRIWAN and JITTISOPA SIRIWAN,

15  together with co-conspirators Gerald Green and Patricia Green,

16  and others known and unknown to the Grand Jury, committed and

17  willfully caused others to commit the following overt acts, among

18  others, in the Central District of California, and elsewhere:

19      Overt Act No. 1:   On or about November 5, 2002, defendant

20  JITTISOPA SIRIWAN opened a bank account at HSBC Bank PLC in the

21  United Kingdom.

22      Overt Act No. 2:   On or about November 8, 2002, defendant

23  JUTHAMAS SIRIWAN sent and caused to be sent to co-conspirator

24  Gerald Green a facsimile on TAT letterhead providing wire

25  instructions for transferring funds to defendant JITTISOPA

26  SIRIWAN's bank account at HSBC Bank PLC in the United Kingdom.

27

28

1    Overt Act No. 3:  On or about November 12, 2002, co-
2 conspirators Gerald Green and Patricia Green caused a wire
3 transfer of $30,000 from FFM's bank account at Bank of America in
4 West Hollywood, California, to defendant JITTISOPA SIRIWAN's bank
5 account at HSBC Bank PLC in the United Kingdom, as partial
6 payment in exchange for the 2003 BKKIFF contract.

7    Overt Act No. 4:  On or about October 23, 2003, co-
8 conspirators Gerald Green and Patricia Green caused a wire
9 transfer of $12,500 from FFM's bank account at Bank of America in
10 West Hollywood, California, to defendant JITTISOPA SIRIWAN's bank
11 account at HSBC Bank PLC in the United Kingdom, as partial
12 payment in exchange for the 2004 BKKIFF contract.

13    Overt Act No. 5:  On or about November 14, 2003, co-
14 conspirators Gerald Green and Patricia Green caused a wire
15 transfer of $73,784 from SASO's bank account at Bank of America
16 in West Hollywood, California, to defendant JITTISOPA SIRIWAN's
17 bank account at HSBC Bank PLC in the United Kingdom, as partial
18 payment in exchange for the TPC LTD contract.

19    Overt Act No. 6:  On or about November 17, 2003, co-
20 conspirators Gerald Green and Patricia Green caused a wire
21 transfer of $17,000 from Flying Pen's bank account at U.S. Bank
22 in Beverly Hills, California, to defendant JITTISOPA SIRIWAN's
23 bank account at HSBC Bank PLC in the United Kingdom, as partial
24 payment in exchange for the TPC LTD contract.

25    Overt Act No. 7:  On or about February 20, 2004, defendant
26 JITTISOPA SIRIWAN opened an account at Citibank in Singapore, and
27 denied in her account application that any member of her
28 immediate family was a senior public official.

13

1    Overt Act No. 8:  On or about April 13, 2004, defendant
2 JITTISOPA SIRIWAN opened a bank account at HSBC Bank
3 International Limited in the Isle of Jersey.

4    Overt Act No. 9: On or about June 10, 2004, co-conspirator
5 Patricia Green opened a bank account at Wells Fargo Bank in West
6 Hollywood, California, in the name of FOF.

7    Overt Act No. 10:  On or about October 22, 2004, co-
8 conpirators Gerald Green and Patricia Green caused a wire
9 transfer of $28,000 from FFM's bank account at Bank of America in
10 West Hollywood, California, to defendant JITTISOPA SIRIWAN's bank
11 account at HSBC Bank International Limited in the Isle of Jersey,
12 as partial payment in exchange for the 2005 BKKIFF contract.

13    Overt Act No. 11:  On or about October 26, 2004, co-
14 conspirators Gerald Green and Patricia Green caused a wire
15 transfer of $13,000 from SASO's bank account at Bank of America
16 in West Hollywood, California, to defendant JITTISOPA SIRIWAN's
17 bank account at HSBC Bank International Limited in the Isle of
18 Jersey, as partial payment in exchange for the TAT public
19 relations contract.

20    Overt Act No. 12:  On or about February 24, 2005, co-
21 conspirators Gerald Green and Patricia Green caused a wire
22 transfer of $100,000 from FOF's bank account at Wells Fargo Bank
23 in West Hollywood, California, to defendant JITTISOPA SIRIWAN's
24 bank account at HSBC Bank International Limited in the Isle of
25 Jersey, as partial payment in exchange for the 2005 BKKIFF
26 contract.

27    Overt Act No. 13:  On or about March 11, 2005, co-
28 conspirators Gerald Green and Patricia Green caused a wire

transfer of $100,000 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to the Friend's bank account at Citibank in Singapore, as partial payment in exchange for the 2005 BKKIFF contract.

Overt Act No. 14:  On or about January 13, 2006, co-conspirator Patricia Green received instructions to divide outstanding "commission" payments owed to defendant JUTHAMAS SIRIWAN into wire transfers to three separate accounts.

Overt Act No. 15:  On or about January 19, 2006, co-conspirators Gerald Green and Patricia Green caused a wire transfer of $78,000 from IFC's bank account at Wells Fargo Bank in West Hollywood, California, to defendant JITTISOPA SIRIWAN's bank account at Standard Chartered Bank in Singapore, as partial payment in exchange for the 2006 BKKIFF contract.

Overt Act No. 16:  On or about March 13, 2006, co-conspirators Gerald Green and Patricia Green caused a wire transfer of $52,876 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to defendant JITTISOPA SIRIWAN's bank account at Citibank in Singapore, as partial payment in exchange for the website contract.

COUNTS TWO THROUGH EIGHT

[18 U.S.C. § 1956(a)(2)(A); 18 U.S.C. § 2]

32.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants JUTHAMAS SIRIWAN and JITTISOPA SIRIWAN knowingly transported, transmitted, and transferred, and willfully caused others to transport, transmit, and transfer, the following monetary instruments and funds from a place in the United States, namely, Los Angeles County, to the following places outside the United States, intending that each of the transactions, in whole and in part, promote the carrying on of a specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2(a)(1); bribery of a public official of Thailand, in violation of Section 149 of Thailand's Penal Code; and the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official, in violation of Section 152 of Thailand's Penal Code:

| COUNT | DATE | FOREIGN PLACE | FINANCIAL TRANSACTION |
|---|---|---|---|
| TWO | 10/22/04 | Isle of Jersey | Wire transfer of $28,000 from FFM's bank account at Bank of America in West Hollywood, California, to defendant JITTISOPA SIRIWAN's bank account at HSBC Bank International Limited in the Isle of Jersey |

| | | | |
|---|---|---|---|
| THREE | 10/26/04 | Isle of Jersey | Wire transfer of $13,000 from SASO's bank account at Bank of America in West Hollywood, California, to defendant JITTISOPA SIRIWAN's bank account at HSBC Bank International Limited in the Isle of Jersey |
| FOUR | 2/24/05 | Isle of Jersey | Wire transfer of $100,000 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to defendant JITTISOPA SIRIWAN's bank account at HSBC Bank International Limited in the Isle of Jersey |
| FIVE | 3/11/05 | Singapore | Wire transfer of $100,000 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to the Friend's bank account at Citibank in Singapore |
| SIX | 1/18/06 | Isle of Jersey | Wire transfer of $40,000 from FFM's bank account at Bank of America in West Hollywood, California, to defendant JITTISOPA SIRIWAN's bank account at HSBC Bank International Limited in the Isle of Jersey |
| SEVEN | 1/19/06 | Singapore | Wire transfer of $78,000 from IFC's bank account at Wells Fargo Bank in West Hollywood, California, to defendant JITTISOPA SIRIWAN's bank account at Standard Chartered Bank in Singapore |
| EIGHT | 3/13/06 | Singapore | Wire transfer of $52,876 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to defendant JITTISOPA SIRIWAN's bank account at Citibank in Singapore |

COUNT NINE

[18 U.S.C. § 982(a)(1); 21 U.S.C. § 853, 28 U.S.C. § 2461(c)]

33. The Grand Jury hereby incorporates by reference and realleges Counts One through Eight of this Indictment, as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(1); Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461(c).

34. Pursuant to Title 18, United States Code, Section 982(a)(1); Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461(c), each of defendants JUTHAMAS SIRIWAN and JITTISOPA SIRIWAN, if convicted of any of the offenses charged in Counts One through Eight of this Indictment, shall forfeit to the United States the following property:

      a. All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Section 1956, for which defendants JUTHAMAS SIRIWAN and JITTISOPA SIRIWAN are convicted, and all property traceable to such property, including, but not limited to, the following:

           (i) All money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956;

           (ii) All commissions, fees, and other property constituting proceeds obtained as a result of such violations;

(iii) All property used in any manner or part to commit or to facilitate the commission of such violations; and

(iv) Approximately $411,434.80 in HSBC Bank International Limited Account No. 11108670 in the Isle of Jersey; $543,456.79 in Citibank Account No. 0259766-001 in Singapore; $327,300 in Standard Chartered Bank Account No. 25-0-852573-6 in Singapore; and $443,084 in HSBC Bank PLC Account No. 22751518 in the United Kingdom;

b.   A sum of money equal to the total amount of proceeds derived from each such offense for which defendants JUTHAMAS SIRIWAN and JITTISOPA SIRIWAN are convicted, for which defendants are jointly and severally liable.

35.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b), each of defendants JUTHAMAS SIRIWAN and JITTISOPA SIRIWAN, if so convicted, shall forfeit substitute property, up to the total value of the property described in paragraph 34, if, by any act or omission of the defendant(s), the property described in paragraph 34, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond

///

///

///

19

the jurisdiction of the court; (d) has been substantially
diminished in value; or (e) has been commingled with other
property that cannot be divided without difficulty.

A TRUE BILL

/s/
_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

DOUGLAS A. AXEL
Assistant United States Attorney
Chief, Major Frauds Section

JILL T. FEENEY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

BRUCE H. SEARBY
Assistant United States Attorney
Major Frauds Section

STEVEN A. TYRRELL, Chief
MARK F. MENDELSOHN, Deputy Chief
Fraud Section, Criminal Division
U.S. Department of Justice

JONATHAN E. LOPEZ, Sr. Litigation Counsel
Fraud Section, Criminal Division
U.S. Department of Justice