ANDRÉ BIROTTE JR.
United States Attorney
ROBBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
JONATHAN E. LOPEZ (SBN 210513)
Deputy Chief, Asset Forfeiture
and Money Laundering Section
Criminal Division
United States Dept. of Justice
    1400 New York Ave, N.W.
    Bond Building, Room 2200
    Washington, D.C. 20005
    Telephone: (202) 307-0846
    Facsimile: (202) 616-2547
    Email: jonathan.lopez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>JUTHAMAS SIRIWAN,<br>  aka "the Governor," and<br>JITTISOPA SIRIWAN,<br>  aka "Jib,"<br><br>  Defendants. | CR No. 09-81-GW<br><br><u>GOVERNMENT'S SUPPLEMENTAL BRIEF</u><br><u>IN OPPOSITION TO DEFENDANTS'</u><br><u>MOTION TO DISMISS RE: INTENT TO</u><br><u>PROMOTE AND ORGANIC JURISDICTION</u><br><br><u>Hearing Date</u>: January 19, 2011<br><u>Hearing Time</u>: 8:30 a.m. |

Plaintiff United States of America, through its counsel of record, hereby submits its supplemental brief per the Court's November 21, 2011, order (DE 83) requesting additional briefing in response to defendants' arguments set forth in their Reply (DE 74) and Sur-Reply (DE 82) regarding the sufficiency of the "intent to promote" allegations in the indictment and defendants' claims that Thailand has "organic" jurisdiction over this matter.

The government's supplemental brief is based upon the attached memorandum of points and authorities, the files and records in this matter, including, the government's Response in opposition to defendants' motion to dismiss the Indictment (DE 67) and the government's subsequent Sur-Reply (DE 80), as well as any evidence or argument presented at any hearing on this matter.

DATED: December 2, 2011   Respectfully submitted,

            ANDRÉ BIROTTE JR.
            United States Attorney

            ROBERT E. DUGDALE
            Assistant United States Attorney
            Chief, Criminal Division

            JENNIFER SHASKY CALVERY
            Chief, Asset Forfeiture
            and Money Laundering Section
            Criminal Division
            United States Dept. of Justice

            _____/s/_____
            JONATHAN E. LOPEZ
            Deputy Chief, Asset Forfeiture
            and Money Laundering Section
            Criminal Division
            United States Dept. of Justice

            Attorneys for Plaintiff
            UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

Per the Court's request, the government files this supplemental briefing to address defendants' claims that (1) the indictment does not properly allege defendants' "intent to promote" pursuant to 18 U.S.C. § 1956(a)(2)(A); and (2) Section 9 of the Thai Penal Code is an expression of Thailand's "organic" or "exclusive" jurisdiction over this matter which precludes the United States, as a matter of international law, from pursuing the instant charges against defendants. As described more fully below, both of these claims are incorrect.

A.   Intent To Promote

The government has sufficiently pleaded all of the charges in the indictment, including the intent to promote aspect of 18 U.S.C. § 1956(a)(2)(A) – International Promotion Money Laundering. The purpose of the indictment is to inform the defendants of the charges against them and to allow them to plead double jeopardy. Hamling v. United States, 418 U.S. 87, 117 (1974). It is *not* to provide facts demonstrating how the government intends to prove those charges or the theory underlying those charges. United States v. Buckley, 689 F.2d 893, 897 (9th Cir. 1982). The test for the sufficiency of an indictment is whether it "contains the elements of the charged crime in adequate detail to inform the defendant of the charge..." Hamling, at 117. This requirement can be satisfied by tracking the language of the statute itself.[1] The indictment

---

[1] United States v. Morrison, 536 F.2d 286, 288 (9th Cir. 1976)("tracking the language of the statute is usually adequate because statutes usually denounce all the elements of the crime");

in this case faithfully tracks the statute, which contains all of the essential elements of the offense. Specifically, with respect to § 1956(a)(2)(A), the indictment states:

> "...**defendants** JUTHAMAS SIRIWAN and JITTISOPA SIRIWAN knowingly **transported**, transmitted, and transferred, and willfully caused others to transport, transmit, and transfer the following **monetary instruments and funds from a place in the United States**, namely, Los Angeles County, **to the following places outside the United States, intending that each of the transactions**, in whole and in part, **promote the carrying on of a specified unlawful activity**, namely..."

Ind. ¶¶ 15, 32 (emphasis added). The elements of a § 1956(a)(2)(A) are as follows:[2]

(1) Defendant transported (or intended to transport or attempted to transport) money from a place in the United States to a place outside the United States;

(2) Defendant acted with the intent to promote the carrying on of a specified unlawful activity.

As the bolded portions of the indictment quoted above illustrate, the indictment sufficiently and directly alleges a violation of § 1956(a)(2)(A).[3] It informs defendants of the charges against them and contains the elements of the charged crime in adequate detail.

Defendants' arguments relate to wanting facts to support those allegations - specifically concerning the "intent to

---

United States v. Blinder, 10 F.3d 1468, 1476 (9th Cir. 1993)(an indictment "which tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense").

[2] Ninth Circuit Model Jury Instructions No. 8.148 (2010).

[3] Defendants have argued that the government has not directly alleged a § 1956(a)(2)(A) violation, but rather has charged the derivative crime of aiding and abetting through 18 U.S.C. § 2. Defendants misread the indictment; both crimes are charged.

promote" element.  As defendants state: "the indictment fails to allege any facts to support the notion the Siriwans directed payments with the 'intent' to *promote* the alleged bribery."  Def. Reply at 10 (emphasis in original).  Defendants appear to believe that they are entitled, at this stage, to an explanation of how the government intends to show that defendants intended to promote the specified unlawful activities.  In fact, at the pleading stage, defendants are only entitled to be put on notice of the charges themselves.  Defendants' demand for facts that support the government's allegations in the indictment relate to the government's proof or theory of the case.  The Ninth Circuit has repeatedly rejected these types of demands when considering the sufficiency of an indictment.  For example, in Buckley, the Ninth Circuit overturned a dismissal of an indictment that failed to include any facts supporting the allegation that a document was mailed in furtherance of the alleged scheme.[4]  The court held that the government "need not allege its theory of the case or supporting evidence, but only the essential facts necessary to

---

[4] See also United States v. Blinder, 10 F.3d 1468, 1476 (1993)(indictment need not explain all factual evidence to be proved at trial); United States v. Terragna, 390 Fed.Appx. 631, 636-637 (9th Cir 2010)(indictment need not set forth all of the evidence to be proved at trial); United States v. Percan, 1999 WL 13040, *3 (S.D.N.Y.)(motion to dismiss denied where money laundering count alleged all essential elements; court not concerned with the Government's ability to prove the charges); United States v. Huber, 2002 WL 257851, * 3 (D.N.D. 2002)(whether government has sufficient evidence to satisfy its burden of proof with respect to either of the properly alleged specific intents in a money laundering count is a question for trial, not a motion to dismiss).

apprise a defendant of the crime charged."[5] Id. at 897. The phrase "necessary to apprise a defendant of the crime charged" is the essential aspect of this analysis. The indictment is a function of notice, not of proof or support.[6] Id. at 899.

Even if the elements were not directly alleged, as they are here, notice of those elements can be inferred from the text of the indictment as a whole.[7] The indictment is very detailed and contains many facts that support a basis for defendants' intent to promote the carrying on of the unlawful activity.[8] If

---

[5] The court further held that "an indictment should be: (1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." Id. at 899. The allegations of the indictment are presumed to be true and any weakness in the government's case is irrelevant to the sufficiency of the indictment. Id. at 897,900.

[6] Defendants cite to United States v. Morrison, 536 F.2d 286 (9th Cir. 1976) for the proposition that an indictment "must do more than recite a crime by title...it must also set forth the elements and specify facts and circumstances of a particular offense." Def. Sur-Reply at 2. Defendants' reliance on Morrison is misplaced. In Morrison, intent was one of the elements of the crime charged. The indictment did not even mention the word intent or give any other indication that mens rea was an element of the offense. The indictment was held insufficient because it was "silent as to mens rea..." not because it lacked facts supporting the statutory text. Id. at 289. Indeed, it is Morrison that states "an indictment tracking the language of the statute is usually adequate..." Id. at 288. In the instant indictment, the government does specifically allege intent, informing defendants that intent is an element of the offense.

[7] United States v. Awad, 551 F.3d 930, 935-936 (9th Cir. 2009)(upholding indictment even though "willfully" was absent in the money laundering charge – finding the willful element can be inferred from the text of the indictment and the test for sufficiency is whether it conforms to minimal constitutional standards). See also Buckley, at 899.

[8] For example, see Ind. at ¶¶ 19, 28. As discussed at p. 5-6, such actions are a valid basis for promotion money laundering.

-4-

defendants believe they require more information than the indictment provides to avoid surprise or prepare a defense, then a bill of particulars is the relief they should seek.[9]

While the indictment is sufficient on its face for the reasons set forth above, it should be noted that defendants' arguments in this area are based on a distorted interpretation of what § 1956(a)(2)(A) actually criminalizes. Section 1956(a)(2)(A) criminalizes the transfer of funds into or out of the United States when those funds are intended to promote criminal activity.[10] The statute reflects Congress' decision to specifically prohibit these types of transfers.[11] Such a transfer is, in and of itself, a separate crime even if the transfer was "part and parcel of the underlying offense."[12] The Ninth Circuit has interpreted the "intent to promote" aspect of the transfer broadly - finding an intent to promote violation where the international transfer assists in carrying out the

---

[9] Such a motion would not be ripe until defendants are arraigned and discovery provided. See United States v. Mitchell, 744 F.2d 701, 705 (9th Cir. 1984)("The purposes of a bill of particulars are to minimize the danger of surprise at trial and to provide sufficient information on the nature of the charges to allow preparation of a defense...these purposes are served if the indictment provides sufficient details of the charges and if the government provides full discovery to the defense.")

[10] United States v. Piervinanzi, 23 F.3d 670, 679-83 (2nd Cir. 1994).

[11] United States v. Krasinski, 545 F.3d 546, 550-551 (7th Cir. 2008).

[12] Id. at 551. In Krasinski, the defendant was convicted of conspiracy to promote international money laundering and to distribute ecstasy. The court held that activities that are "part and parcel of the underlying offense" can be considered to promote the carrying on of the unlawful activity).

-5-

underlying fraud or is intended to hide the funds from the government to avoid detection of the scheme[13], is central to the scheme's objectives[14], or lends an aura of legitimacy to the scheme[15]. Similarly, other courts have adopted a broad definition of "intent to promote," finding violations of the statute where the international transfers were integral to the success of the scheme[16], or allowed the defendant to perpetuate the scheme or keep the scheme going[17]. In addition, the intent to promote element can be established circumstantially.[18] The simple point is that the statute criminalizes the transfers, not the underlying SUA.

Defendants, however, continue to confuse the meaning of the statute by arguing that the government has not stated a money laundering charge but "has simply alleged the elements of the specified unlawful acts – alleged FCPA and Thai anti-corruption laws." Def. Sur-Reply at 1. This statement is simply

---

[13] United States v. Moreland, 622 F.3d 1147, 1167 (9th Cir. 2010).

[14] United States v. Bush, 626 F.3d 527, 538 (9th Cir. 2010).

[15] United States v. Savage, 67 F.3d 1435, 1440 (9th Cir. 1995); United States v. Montoya, 845 F.2d 1068, 1078 (9th Cir. 1991).

[16] Piervinanzi, 23 F.3d at 679-83 (2nd Cir. 1994).

[17] Krasinski, 545 F.3d at 550-551 (7th Cir. 2008); United States v. Robinson-Gordon, 418 Fed.Appx. 173, 176 (4th Cir. 2011)

[18] United States v. Trejo, 610 F.3d 308, 314-315 (5th Cir. 2010)(noting that awareness of the inner workings of the criminal activity is circumstantial proof of intent to promote its unlawful purpose). As set forth in the indictment, defendants were well aware of the inner workings of the criminal activity in this case.

incorrect.[19]  Defendants are attempting to blend the crimes together to make it appear as though the government is trying to do something it otherwise could not (that is, charge the FCPA). Defendants' attempts at misdirection are best evidenced by the following statement in their Reply:

> "[T]he 'intent' demonstrated by the Indictment is the intent to *consummate* the corrupt arrangement, not to promote its carrying on…the Green's alleged transfers were not intended to promote the carrying on of the underlying crime…the Green's transfers were the crime."

Def. Reply at 11 (emphasis in original).  There are several incorrect concepts layered into the above statement.  First, § 1956(a)(2)(A) has absolutely nothing to do with "consummating" the SUAs.[20]  At issue here is defendants' international transfers from accounts in the United States to accounts all over the world that were intended to promote the SUAs - not the consummation of the SUAs.  By way of example, defendants did not ask the Greens to transfer the money into a bank account in the United States where banks, pursuant to know-your-customer rules, would ask questions regarding its origins, nor did defendants request that the money go back to Thailand where suspicions could be aroused. Rather, defendants directed the payments out of the United States into bank accounts in five different countries to avoid detection

---

[19]  Nowhere in the indictment or any of the filings has the government alleged any of the elements of the SUAs.  Indeed, the government need not allege the elements of the SUA.  <u>United States v. Lazrenko</u>, 564 F.3d 1026, 1033 (9th Cir. 2003).

[20]  Defendants repeat this theme in their Sur-Reply, claiming that the government is engaged in a "creative effort to charge the Siriwans' alleged receipt of the bribes..."  Receipt of the bribes has nothing to do with the elements of the crimes charged in the indictment.

-7-

and perpetuate the unlawful activities.[21] Such actions are clearly a basis for promotional money laundering. Whether a jury agrees with the government's theories for these transfers, or defendants' theories, is a matter for trial, not for a motion to dismiss.[22]

The second part of the above statement, "the Green's transfers were the crime"[23] again misses the point as to what is being charged and is yet another attempt to claim that the same transfer of money cannot constitute two offenses (which is an irrelevant because only one offense is charged). As discussed at length in previous filings, the same transfer of money can be the basis for two offenses in the § 1956(a)(2)(A) context.[24] This is

---

[21] As previously discussed, the government is under no obligation to set forth its theory of the case.

[22] That defendants have attempted to distinguish these transfers in their filings is further evidence of their knowledge of the charges against them.

[23] The crime presumably being the FCPA offense or Thai violations - neither of which is the crime charged in this case.

[24] Defendant's reliance on Hall and Van Alstyne as support for their assertions is misplaced. Both cases relate to § 1956(a)(1)(A) charges. The Ninth Circuit squarely held in Moreland that a Van Alstyne analysis has no place in a 1956(a)(2)(A) case, as those charges stand on different ground (no proceeds requirement). Moreland, 622 F.3d at 1167. In addition, in both cases the defendants were charged with both money laundering offenses and SUA offenses. In this case, only money laundering is charged. See also United States v. Atiyensalem, 367 Fed.Appx. 845, 846 (9th Cir. 2010)(where defendant is only charged with money laundering and not the underlying SUA, the defendant is not at risk of being convicted for two different crimes for the same behavior...thus, the merger problem inherent in Santos and Van Alstyne does not exist).

precisely because § 1956(a)(2)(A) prohibits different conduct.[25] Defendants are saying, without using the word "merger," that the government is essentially trying to charge the SUAs through money laundering.  This is not so.  Regardless, these arguments relate to prosecutorial charging decisions, not the sufficiency of the indictment as returned by the grand jury.  As such, they have no place in a motion to dismiss.

      B.   <u>Thai "Organic" or "Exclusive" Jurisdiction</u>

Defendants' assertions of Thailand's "organic" or "exclusive" jurisdiction in this matter, which they claim is contained in Title 9 of Thailand's Penal Code, are references to a concept that simply does not exist in international law.  There is no such thing as organic or exclusive jurisdiction in international law.  Further, Title 9 of Thailand's Penal code makes no such claim.

It is well settled that international law recognizes several principles whereby a nation may enact laws that apply extraterritorially.  It is equally well settled that each nation has equal rights in this regard.  That is, what one nation can do under international law, any other nation can similarly do - no one nation is superior to another.  These internationally accepted principles for legislating extraterritorially apply only to a nation's ability to authorize jurisdiction for itself – not to unilaterally limit the jurisdiction of another nation.

---

[25] As set forth in previous filings, this concept is explained in detail as it relates to promotion money laundering and the FCPA in <u>United States v. Bodmer</u>, 342 F.Supp.2d 176, 190-192 (S.D.N.Y. 2004).

International law does not recognize any right or principle that allows a unilaterally preemption of jurisdiction which would prevent the United States (and anyone else) from asserting and protecting its important interests.

The issue of one nation attempting to unilaterally preempt another nation's ability to prosecute was addressed in the Permanent Court of International Justice ("PCIJ") in 1927 in <u>The Case of the S.S. Lotus</u>, P.C.I.J., Ser. A, No. 10 (1927), attached hereto as Exhibit A, which established the fundamental rule of concurrent jurisdiction in international law. In <u>Lotus</u>, a collision occurred on the high seas between a French ship (Lotus), under the watch of Lt. Demons, a French citizen, and a Turkish ship. The Turkish ship was cut in two, sank, and eight Turkish nationals died. The Lotus continued on its original course to Constantinople. France, making arguments similar to defendants' arguments in this case, claimed that it had personal jurisdiction over Lt. Demons and that Turkey could had no jurisdiction to prosecute Lt. Demons under international law. <u>Id</u>. at ¶¶ 28, 32. The PCIJ refused to accept France's argument and held that "restrictions upon the independence of States cannot therefore be presumed." Id. at ¶ 44. The PCIJ further held:

> There is nothing to support the claim according to which the rights of the State under whose flag the vessel sails may go farther than the rights which it exercises within its territory...there is no rule of international law prohibiting the State to which the ship on which the effects of the offense have taken place belongs, from regarding the offense as having been committed in its territory and prosecuting accordingly.

> This conclusion could only be overcome if it were shown that there was a rule of customary international law which, going further than the principal stated above, established the exclusive jurisdiction of the State whose flag is flown...[I]n the Court's opinion, the existence of such a rule has not been conclusively proved.

Id. at ¶ 65-67. The PCIJ concluded as follows:

> It is only natural that each [State] should be able to exercise jurisdiction and to do so in respect of the incident as a whole. **It is therefore a case of concurrent jurisdiction**.

Id. at ¶ 86 (emphasis added).

As the above case demonstrates, defendants' claims of exclusive or organic jurisdiction do not exist in international law.[26] Rather, concurrent jurisdiction is the accepted practice. As the Ninth Circuit stated in United States v. Corey, 232 F.3d 1166, 1179 (9th Cir. 2000), "[C]oncurrent jurisdiction is well recognized in international law...two or more states may have legitimate interests in prescribing governing law over a particular controversy." Put simply, "[P]rosecution by a foreign sovereign does not preclude the United States from bringing criminal charges."[27] Even assuming conflicts between nations arise, as the court in Corey points out "American courts have on

---

[26] Providing for such a concept would produce absurd results. For example, it would permit nations to pass legislation protecting its citizens from prosecutions by other nations and create a "race to legislate" sole jurisdiction for that purpose.

[27] United States v. Richardson et al., 580 F.2d 946, 947 (9th Cir. 1978)(denying motion to dismiss where defendant was already prosecuted in Guatemala for the same offense). See also United States v. Guzman, 85 F.3d 823, 826 (1st Cir. 1996)(holding that when a defendant in a single act violates the "peace and dignity" of two sovereigns by breaking the laws of each, he has committed two distinct offences and can be prosecuted and punished for both.)

-11-

numerous occasions managed conflicts arising when two nations had authority over the same issue." Id.  These conflicts are often managed by treaty.  "[I]ndependent nations cede their exclusive control over their territory through treaties, and the terms of those agreements [treaties] govern that concurrent authority."[28] Id. at 1180.

Moreover, contrary to defendant's assertions, Thailand, through Title 9 of its Penal Code or otherwise, has not attempted to claim organic or exclusive jurisdiction over the offenses alleged in the indictment.  According to defendants, Title 9 reads as follows:

> Government Officials commits the offences as provided in Section 147 to Section 166...outside the Kingdom shall be punished in the Kingdom

Def. Motion to Dismiss (DE 64) at 2.  The term "exclusive" is nowhere to be found in the above statute.  Defendants simply insert that term as if it were included.  It is not.  Likewise, the term "exclusive", "organic", or even "sole" nowhere appears in the Thai Supreme Court cases defendants cite[29], the Thai

---

[28] The United States has a treaty with Thailand governing priorities of prosecutions and extradition of its citizens which is discussed in the Government's Response (DE 67) at 47-48.  The treaty process is the appropriate avenue to resolve any conflicts.

[29] Thai Supreme Court Decision No. 1035/2464 involves a Thai (Siam) citizen committing an offense in Rome; Thai Supreme Court Decision No. 1706/2535 involves a Thai citizen in Morocco.  Both decisions are completely silent on the respective host nation's interest in each case, including whether such nation even expressed an interest in prosecuting the case.  These decisions relate solely to Thailand's own jurisdiction and do not reference organic or exclusive jurisdiction.

legislative history defendants cite[30], or their own Thai lawyer's declaration[31]. The absence of any exclusivity language is consistent with the accepted principle that the concept does not exist in international law[32] and shows that Thailand is simply providing for its *own* jurisdiction to prosecute its nationals when they commit crimes abroad.

Furthermore, reliance on international law is unnecessary because Congress has expressed a clear extra-territorial intent for the money laundering laws pursuant to § 1956(f). If Congress' intent is specific, there is no need to look to international law - as Congress is not bound by international law. "If [Congress] chooses to do so, it may legislate contrary to the limits posed by international law so long as the legislation is constitutional."[33] Where the statute is clear as to Congress's intent, then "Article III courts...must enforce the

---

[30] Minutes of November 6 1952 Meeting, Exhibit C to DE 76. The Thai legislative history cited involves Thailand debating whether to grant *itself* jurisdiction to prosecute officials that commit crimes abroad – in accordance with its rights under international law. It says nothing of precluding other nations from exercising jurisdiction over such an official.

[31] Letter of Dr. Pinai Nanakorn, Assistant Professor, Faculty of Law, Exhibit D to DE 76. The letter only describes Thailand's jurisdiction. The letter is silent as to the possible jurisdiction of other nations and never states, directly or indirectly, that Thailand has "exclusive," "organic," or "sole" jurisdiction over the offenses contained in Thai Penal Code Section 9.

[32] Law review articles discussing the concept of organic jurisdiction are not international law.

[33] Munoz v. Ashcroft, 339 F.3d 950, 958 (9th Cir. 2003).

-13-

intent of Congress irrespective of whether the statute conforms to customary international law."[34]

Because Congress has expressed its clear intent for extra-territorial application, defendants' arguments are an attempt to create the appearance of conflicts where none exist. There is no claim of Thai exclusivity in this matter, there is no conflict with international law[35], nor is there any reason even to look to international law. Defendants' manufactured claims of exclusive Thai jurisdiction lack merit.

This Court should DENY defendants' Motion to Dismiss.

DATED: December 2, 2011          Respectfully submitted,

                                      ANDRÉ BIROTTE JR.
                                      United States Attorney

                                      ROBERT E. DUGDALE
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                      JENNIFER SHASKY CALVERY
                                      Chief, Asset Forfeiture
                                      and Money Laundering Section

                                      United States Dept. of Justice

                                      _____/s/_____
                                      JONATHAN E. LOPEZ
                                      Deputy Chief, Asset Forfeiture
                                      and Money Laundering Section
                                      Criminal Division
                                      United States Dept. of Justice
                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

---

[34] United States v. Yousef, 327 F.3d 56, 92 (2nd. Cir. 2003)(parenthetical omitted).

[35] The cases defendants cite to in support of their conflict with international law arguments relate to situations where the laws of each state require inconsistent conduct. That is, obeying the law of one state, will be a violation of law in another state. This situation does not exist here.