1                 UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3                       WESTERN DIVISION

4          THE HONORABLE GEORGE H. WU, JUDGE PRESIDING

5

6   UNITED STATES OF AMERICA,        )
                                     )
7                    Plaintiff,      )
                                     )
8            vs.                     ) NO. CR 09-81-GW
                                     )
9   JUTHAMAS SIRIWAN AND JITTISOPA   )
    SIRIWAN,                         )
10                                   )
                     Defendants.     )
11  _____ )

12

13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  Los Angeles, California

17

18         Monday, January 30, 2012, 10:10 A.M.

19

20      Defendants' Motion to Dismiss the Indictment

21

22                              PAT CUNEO CSR 1600, CRR-CM
                                Official Reporter
23                              Roybal Federal Building
                                255 East Temple Street
24                              Room 181-E
                                Los Angeles, CA  90012
25                              (213) 617-1817
                                patcuneo1600@gmail.com

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:    UNITED STATES DEPARTMENT OF JUSTICE
                           AFMLS - Money Laundering and Bank Integrity Unit
 3                         BY:  JONATHAN ERROL LOPEZ
                           ASSISTANT UNITED STATES ATTORNEY
 4                         1400 New York Avenue NW
                           Washington, DC  22201
 5                         (202) 598-2306
                           jonathan.lopez@usdoj.gov
 6
     FOR THE DEFENDANTS:   KELLEY, DRYE & WARREN LLP
 7                         BY:  DAVID E. FRULLA, ATTORNEY AT LAW
                           and  SHAUN M. GEHAN, ATTORNEY AT LAW
 8                         3050 K Street NW
                           Suite 400
 9                         Washington, DC  20007-5108
                           (202) 342-8648
10                         dfrulla@kelleydrye.com
                           sgehan@kelleydrye.com
11
     FOR THE DEFENDANTS:   KELLEY, DRYE & WARREN LLP
12                         BY:  DAVID E. FINK, ATTORNEY AT LAW
                           10100 Santa Monica Boulevard
13                         23rd Floor
                           Los Angeles, California  90067
14                         (310) 712-6170
                           dfink@kelleydrye.com
15

16

17

18

19

20

21

22

23

24

25
```

1    **LOS ANGELES, CALIF.; MONDAY, JANUARY 30, 2012; 10:10 A.M.**

2                          -oOo-

3              THE CLERK:  Please remain seated and come to

4    order.  Court is again in session.

5              THE COURT:  All right.  Let me call the matter of

6    United States vs. Siriwan.

7              MR. LOPEZ:  Good morning, Your Honor.

8    Jonathan Lopez on behalf of the United States.

9              THE COURT:  All right.

10             MR. FRULLA:  David Frulla on behalf of the

11   Siriwans.  Good morning, Your Honor.

12             THE COURT:  All right.  Good morning.  We're here

13   on the motion -- continuation of the motion to dismiss the

14   Indictment.

15             Let me ask a couple of questions.  My

16   understanding is the United States government has made a

17   request to the government of Thailand to extradite the

18   Siriwans; is that correct?

19             MR. LOPEZ:  Your Honor, that request is on hold

20   per agreement of the parties pending the outcome of this

21   motion.

22             THE COURT:  Okay.  Let me ask you.  It seems to me

23   that some of the questions that are raised here would be

24   answered by that request.

25             MR. LOPEZ:  Your Honor --

1          THE COURT:  In other words, you know, there's been

2   an argument made about, you know, the extent to which

3   Thailand would feel that their concerns or interests

4   predominate over what interests that our government would

5   have in this particular situation.

6          Therefore, it seems to me that would be precisely

7   addressed in the decision whether or not to extradite.  So

8   why am I deciding some of this stuff when -- in other words,

9   if it turns out the government of Thailand refuses to

10  extradite, why would I be doing any of this?

11         MR. LOPEZ:  Your Honor, this is something that the

12  government raised in the earlier filings and said that this

13  whole motion to dismiss was premature precisely because some

14  of the --

15         THE COURT:  Maybe I didn't realize how right you

16  were.

17         MR. LOPEZ:  Well, I won't comment on that, Your

18  Honor.

19         THE COURT:  *(Laughing.)*

20         MR. LOPEZ:  But I'll tell you that regardless of

21  how Thailand -- we have to see what Thailand said in

22  response to our extradition request.

23         Of course, the United States believes we have a

24  facially valid Indictment that states all the elements, well

25  within our rights, well within Congress' right to --

```
 1            THE COURT:  I understand.  We'll get to that in a
 2   moment.
 3            MR. LOPEZ:  But setting that aside, Your Honor, I
 4   couldn't agree with you more in the sense that as how
 5   defense counsel has chose to frame this issue as Thailand's
 6   rights are superior, Thailand is going to have an
 7   opportunity through the treaty process to make that
 8   decision.
 9            THE COURT:  Yes.
10            Let me ask defense counsel.  Was I jumping the
11   gun?
12            MR. FRULLA:  I believe that you were, Your Honor.
13            THE COURT:  Oh.  So now, in other words, both
14   sides agree that I should wait until the --
15            MR. FRULLA:  You were jumping the gun in saying
16   that you should wait for Thailand.
17            THE COURT:  Oh, no.  That wasn't -- that's not how
18   I jumped the gun.
19            MR. FRULLA:  In the *Morrison* case, Your Honor,
20   Justice Scalia explained that there's an anterior decision
21   for you to make about the scope of this court's -- the scope
22   of the law as a legal matter.
23            THE COURT:  Let me stop you.  I agree obviously
24   that there are some issues that have been raised that are
25   separate from the issue about the Thailand, you know, the
```

1    superiority or the dominance of Thailand's interest in the

2    present controversy.

3            I agree to that; but it seems to me that if, in

4    fact, the government of Thailand refuses to extradite, this

5    case doesn't go any further, does it?

6            MR. LOPEZ:  Well, it absolutely could, Your Honor,

7    go further if Thailand refused to extradite.  For example,

8    if the defendants in question were to be -- were to come to

9    the United States, our Indictment would still be active.

10           THE COURT:  That's stupid, yes.

11           MR. LOPEZ:  Or if we were to pick them up in

12   another country with which we have agreements with *per se.*

13   So it would not go away.  I wouldn't say that the government

14   wouldn't reevaluate what its position might be; but

15   technically speaking, this Indictment would not disappear

16   based on that --

17           THE COURT:  Well, but I suppose one could say our

18   government probably would be reevaluate this case if

19   Thailand exercises its, you know, decision-making authority

20   and decides not to extradite.

21           Obviously, however, if Thailand does agree to

22   extradite, then we go forward without that issue because

23   that solves one of the questions to my mind.

24           MR. FRULLA:  Your Honor --

25           THE COURT:  Yes.

| | |
|---|---|
| 1 | MR. FRULLA:  -- that assumes that the extradition |
| 2 | standards in Thailand are precisely congruent with the issue |
| 3 | that we have here today; and we don't believe that to be the |
| 4 | case. |
| 5 | THE COURT:  Well, but no.  But it clearly gives |
| 6 | rise to Thailand's ability to exercise, if it feels that |
| 7 | there is some sort of dominant -- they have the dominant |
| 8 | interest or it has a dominant interest in this particular |
| 9 | situation; it gives them the opportunity to exercise that |
| 10 | and to express it in an unambiguous way. |
| 11 | So that's one aspect.  So all right. |
| 12 | Let me also ask this next question.  There was a |
| 13 | citation to a new case, I think, in the defense response, |
| 14 | the *United States v. Duperval*.  Is that how you pronounce |
| 15 | it? |
| 16 | MR. LOPEZ:  I don't remember that citation, Your |
| 17 | Honor. |
| 18 | THE COURT:  It's the case in Florida, the other |
| 19 | case where this issue is -- |
| 20 | MR. FRULLA:  That's the other case where former |
| 21 | government official has been indicted using this theory down |
| 22 | in Miami.  In that case, I think it's set for trial. |
| 23 | THE COURT:  You say that it's set for trial.  Was |
| 24 | there a motion to dismiss the Indictment in that case? |
| 25 | MR. FRULLA:  No, not that we saw. |

1          MR. FINK:  Not on those grounds, Your Honor.

2          MR. LOPEZ:  Your Honor, and let me just flesh out.

3     I mean, the FCPA is only a piece of this puzzle.  This

4     statute has been charged precisely in this manner with a lot

5     of different crimes including a recent decision that --

6          THE COURT:  You're talking about the money

7     laundering --

8          MR. LOPEZ:  Right.

9          THE COURT:  Obviously, there are thousands of

10    these cases.  I understand that.  But are there thousands of

11    these cases involving a foreign official?

12         MR. LOPEZ:  Let me take it one step further.

13    Let's just say the FCPA just disappeared tomorrow.

14         THE COURT:  Yes, yes.

15         MR. LOPEZ:  This Indictment still stands based on

16    a violation --

17         THE COURT:  Not on the basis of a bribery charge.

18         MR. LOPEZ:  On the basis of the violation of

19    foreign law under 1956(c)(b)(4).

20         THE COURT:  I understand the government's

21    position; but I just want to figure out how many other

22    situations have arisen where this has, you know, this theory

23    is coming into play.

24         MR. LOPEZ:  And, again, Your Honor, I think the

25    foreign official piece of it is a red hearing.

```
 1              THE COURT:  No.  Let me put it this way.  I agree
 2    with a lot of what the government says in its responsive
 3    papers.  But this is the major problem that I have in this
 4    case and, that is, this is it.
 5              You know, there's no dispute that, you know, when
 6    Congress enacted the Foreign Corrupt Practices Act or FCPA.
 7    It exempted foreign officials from being subject to
 8    prosecution for accepting bribes under that statute as
 9    stated in United States v. Cassel, 925 F.2d 831 at 836,
10    which is a Fifth Circuit case.
11              The FCPA contains a legislative policy to leave
12    unpunished a well-defined group of persons who are necessary
13    parties to the act constituting the violation of that
14    substantive law and that is the foreign officials who accept
15    bribes.
16              And other cases have said that prosecutors cannot
17    circumvent that exclusion by alleging the crime as a
18    conspiracy crime; and I presume one would also say the thing
19    about -- the same thing about trying to use aiding and
20    abetting as a means of circumventing the exception of
21    foreign officials from the Foreign Corrupt Practices Act
22    which, in essence, is a bribery-type situation.
23              MR. LOPEZ:  Can I respond to that, Your Honor?
24    And in doing that, I'll say we are getting at entirely
25    different conduct.
```

```
1            THE COURT:  No.  Let me stop.  Let me stop.  I
2     understand the point.  I understand that you're going into
3     the money laundering act; but let's take a look as it.
4            I mean, if the whole point of Congress, which
5     these, you know, cases seem to indicate, the whole point of
6     Congress in excepting foreign officials is to avoid certain
7     problems when you prosecute foreign officials in this
8     country for these types of criminal acts involving bribery,
9     et cetera.
10           Those are the same concerns when you attempt to go
11    after these people for money laundering because they
12    accepted bribes.
13           In other words, what you're saying is that:  Oh,
14    as long as the foreign official, you know, agrees to accept
15    the bribe, they're scot-free.
16           But once the foreign official gets the money which
17    was promised as the bribe, then they violate money
18    laundering and, therefore, the same concerns that Congress
19    had in excepting foreign officials from the Foreign Corrupt
20    Practices Act vanishes into air because the money which they
21    were promised they have now received and, therefore, they
22    can be guilty of conspiracy in regards to money laundering.
23           MR. LOPEZ:  I disagree with that and I'll tell you
24    why.
25           If the foreign official received the money or
```

1   directed the bribe payment through Consult Asia in Thailand

2   and kickbacks were paid out of Thailand into a bank account

3   in Thailand, there would be no 1956(a)(2)(A) charged here

4   or, conversely, if the kickbacks are paid into the foreign

5   official's U.S. accounts here and never left this country,

6   there wouldn't be 1956(a)(2)(A) charged here as alleged.

7        What we have charged is the use of the financial

8   system, the U.S. financial system here, to perpetrate

9   crimes, not the bribery.  We're perpetuating -- we haven't

10  charged bribery.  The defense keeps wanting to cast this as

11  receipt of a bribe or being charged for taking part in

12  bribery.  That's not what we're charging.  We're using the

13  misuse of United States financial system through conduct

14  that the defendants did, and there's a long line of cases

15  that talk about conduct can occur when --

16       THE COURT:  But the conduct is the bribe.

17       MR. LOPEZ:  No, no, no.  That's not right.  The

18  conduct is the use of the financial system to send that

19  kickback money out.  So let me break it down in a different

20  way for you.

21       The bribe -- the FCPA crime was completed long

22  before these payments were made.  Long before.  In fact,

23  money came from Thailand to California to the Greens'

24  account to run these contracts.

25       Within that money was profit for the Greens as

1  well as money to go back as kickback money; and it's then

2  that second step of sending that kickback money through

3  overseas through the U.S. financial system that did not

4  involve --

5          THE COURT:  Let me stop you.  Let me ask you.

6  This is a slight aside from what you're saying but you can

7  go back to what you're saying in a moment.

8          But I don't understand.  You have a forfeiture

9  provision here which basically asks this government to

10  forfeit, I guess, Thailand's money.

11         Does the government here plan to pay Thailand back

12  that money?

13         MR. LOPEZ:  There's a forfeiture process by which

14  when we take the money back, Thailand can make a claim.  I

15  mean, in essence, it gets there a different way.

16         THE COURT:  Okay.

17         MR. LOPEZ:  There's a process for that.

18         THE COURT:  Okay.  Sorry for interrupting.

19         MR. LOPEZ:  Let me go to a different point.  The

20  *Bodmer* case, I don't know if this court read the *Bodmer*

21  case --

22         THE COURT:  I read *Bodmer* but the *Bodmer* case

23  doesn't involve a foreign official who is a foreign

24  official.  It involves a foreign national, but it doesn't

25  involve a foreign official.

1          MR. LOPEZ:  But, Your Honor, the same concept --

2    if you let me just finish.

3          THE COURT:  Not quite the same concept.

4          MR. LOPEZ:  Let me just finish.  It was the same

5    conduct in the sense of it was a prohibited person.  It was

6    someone that the court decides the FCPA should not apply to.

7    It is a prohibited person.

8          THE COURT:  No, no, no.  It's not a prohibited

9    person.

10          MR. LOPEZ:  Yes.  The *Bodmer* case found --

11          THE COURT:  No, but the whole point of excluding

12    foreign officials is foreign officials.  It's not a foreign

13    national.  Foreign nationals can be included in that.

14          MR. LOPEZ:  Your Honor, what the court in *Bodmer*

15    found was that that individual, who was an agent of somebody

16    else --

17          THE COURT:  He's a lawyer.

18          MR. LOPEZ:  -- that the statute didn't apply to

19    that individual; but the FCPA did not apply to person X.

20    Said:  You, person X, FCPA doesn't apply to you.  However,

21    that doesn't mean money laundering can't apply to you.

22          So in the same context, FCPA said:  You, person Y,

23    that's a foreign official, FCPA doesn't apply to you.

24    However --

25          THE COURT:  I have *Bodmer* right here.  It's 342

1    F.Supp2d. 176.

2          MR. LOPEZ:  Right.  So the whole first part of the

3    decision, Your Honor, and I can get my copy out as well, is

4    about how the FCPA doesn't apply to that individual.

5          That's the first part of the decision.  It said:

6    You know what?  The government overreached --

7          THE COURT:  Well, no, the reason why it wasn't --

8    the only reason that it didn't apply to him was not because

9    he was found to have been exempt.  The reason why he was

10   found is because the FCPA, as it existed at that time, did

11   not apply to the defendant as he was not, quote, otherwise

12   subject to the jurisdiction of the United States.

13         In other words, this is not a situation where

14   Congress has made a determination that this person in his

15   status of being a foreign official is not subject to the

16   FCPA.

17         This is a situation where it was just a

18   jurisdictional aspect of it, not a legislative determination

19   in regards to what is and what is not in the interest of

20   this country insofar as the prosecution of foreign officials

21   are concerned.

22         MR. LOPEZ:  When Congress enacted the money

23   laundering laws and the FCPA, they added a provision of

24   violations against foreign laws.  Right?

25         And so that can serve as an SUA; and in that,

1    Congress is acknowledging that the United States can't

2    prosecute itself certain classes of crimes.

3           Yet still those classes such as foreign laws or

4    such as the RICO laws under state things, yet still they can

5    serve as crimes to be promoted.

6           So while Congress acknow -- well, I mean, I won't

7    go so far as to say that Congress has affirmatively said it;

8    but while it's well-recognized that the FPCA can't apply to

9    foreign officials as quoted by *Cassel* and so on, it is not

10   the case where Congress has said that you can't be found

11   guilty or accused of violating another crime that you

12   yourself can't be convicted of.

13          So, for example, just because the foreign official

14   can't be prosecuted under the FCPA doesn't mean that they

15   have free rein to use our financial system to help others

16   violate the FCPA.

17          THE COURT:  But the problem is if they cannot be

18   prosecuted for the acts for which the money is being used --

19          MR. LOPEZ:  Uh-huh.  Same as all state crimes,

20   same as all the foreign officials, we can't prosecute them.

21          THE COURT:  But, no, there's a little bit of

22   difference here because Congress has indicated that in its

23   balancing of the interests of this country, this country

24   should not prosecute foreign officials for the bribery-type

25   situation.

```
 1              And if -- what you're saying is:  Well, even
 2   though we can't prosecute them for the bribery situation, we
 3   can prosecute them for engaging in a situation where they
 4   agreed to be paid by money which is sent to them, which is
 5   the bribe, as long as it involves our banking system.
 6              Well --
 7              MR. LOPEZ:  That's right, Your Honor.
 8              THE COURT:  -- you know.
 9              MR. LOPEZ:  You can't use our banking system.  If
10   they wanted to commit this crime without our banking system,
11   which they could have, then we wouldn't have -- there may be
12   other money laundering charges that apply.
13              THE COURT:  Let me ask.  Isn't money laundering,
14   the penalties for money laundering greater than the bribery?
15   So, in other words, you're saying -- well, first of all, is
16   that true?  I think it is.
17              MR. LOPEZ:  The maximum sentences are larger
18   but --
19              THE COURT:  So, therefore, in other words, you're
20   risking the foreign official, even though they agree they
21   cannot be prosecuted for accepting the bribe, you're saying
22   that they can be penalized greater for saying that:  Oh,
23   simply for the fact that the money is paid to them not in
24   the other ways that you're saying which could avoid the use
25   of our banking system, that they can be subject to greater
```

1    penalties by the -- and even -- I don't even think the

2    evidence shows that they're the ones that chose the means in

3    which the payments were made but assuming arguendo that

4    there were, you know, does that make some sort of sense?

5              MR. LOPEZ:  Well, the evidence does, in fact, show

6    that.  Overt Act, I believe it's 32 in the Indictment, says

7    that Juthamas Siriwan sent a fax with wire instructions for

8    the money to go to the UK so directly exactly where it was

9    supposed to go overseas from the United States.

10             THE COURT:  That was a part of the bribery.

11             MR. LOPEZ:  But we're not charging bribery.

12             THE COURT:  I understand you're not charging

13   bribery.  You're trying to get around charging bribery by

14   saying that it's all right if you engage in the bribe so

15   long as you don't have the money go to you through a banking

16   system that goes from this country to a foreign country.

17             Once it does that, then you're subject to even

18   worse penalties.

19             MR. LOPEZ:  Your Honor, I'm saying that they've

20   committed a separate crime.  Now, that, the penalties may be

21   higher for that -- for money laundering than FCPA

22   specifically in the underlying crime.  Under your theory, we

23   would have to go through every single SUA being promoted,

24   compare what the underlying statutory maximum --

25             THE COURT:  No, I'm not -- actually, that's not my

```
 1    point.  My point is if you in the underlying SUA, if there
 2    is a congressional determination that that individual should
 3    not be charged for receipt of money in that situation, that
 4    the fact that money is sent to them via, you know, this --
 5    what would be an ostensible, you know, international wire
 6    transfer or something of that sort, should not all the
 7    sudden negate the congressional concern that these
 8    individuals should not be prosecuted for the accepting of
 9    bribes.
10              MR. LOPEZ:  But that's not what they're -- even
11    under the FCPA they're not being prosecuted for accepting
12    bribes.  Let's assume they were.  They were prosecuted for
13    entering into an agreement to exchange a contract for value
14    and all --
15              (Counsel overtalking; not reported.)
16              THE COURT:  Which is a bribe.
17              MR. LOPEZ:  But the FCPA crime was committed long
18    before the bribe and we're getting at different conduct.  It
19    is just different conduct.  I'm not trying --
20              THE COURT:  I understand your position.
21              MR. LOPEZ:  Well, let me just throw one more thing
22    out there.  The Greens, for example.  The Greens were
23    charged with both, the exact same statutes here for money
24    laundering and bribery because there were two crimes being
25    committed.
```

```
 1              So it's not an example of:  Oh, my gosh, the
 2    Greens we got them on bribery but we can't do that with the
 3    governor so let's go we figure out what's there.  We charged
 4    the Greens --
 5                   (Counsel overtalking; not reported.)
 6              THE COURT:  No, let me stop you.  The Greens are
 7    entirely different because the Greens aren't foreign
 8    officials.  Had the Greens been foreign officials, then I
 9    would say, yes, you had a problem there but --
10              MR. LOPEZ:  No, no.  On the money laundering
11    piece, they committed a separate crime.  There was a
12    separate crime there that they committed.
13              THE COURT:  Yes.
14              MR. LOPEZ:  So the Siriwans committed one of those
15    crimes we can charge.  So there are two crimes that
16    happened.  On the Greens, we could charge both.  On the
17    Siriwans, we can't charge one, but there's still -- the
18    second crime is there; and that's the use of our financial
19    situation.
20              It meets every single element.  It's not a new
21    novel theory.  It's used all the time stand alone --
22              THE COURT:  And, again, what I'm saying is I agree
23    with you but except that the Greens weren't foreign
24    officials.  That's the problem I have.  I'm just telling you
25    what the problem I have.
```

```
 1              MR. LOPEZ:  Let me see if I can tackle it one

 2    other way.

 3              THE COURT:  (Laughing.)

 4              MR. LOPEZ:  Let's assume they can't, under your

 5    theory --

 6              THE COURT:  Energizer Bunny.

 7              MR. LOPEZ:  Huh?

 8              THE COURT:  You're the Energizer Bunny.

 9    (Laughing.)

10              MR. LOPEZ:  Well, I believe the law is firmly on

11    my side.

12              THE COURT:  I understand you believe that, you

13    know; and, you know, I'm sure there might be other judges

14    who probably would agree with you.  I'm just telling you the

15    problem I have.

16              MR. LOPEZ:  Let me take it this way.

17              Let's assume that the foreign official, as you

18    said -- let's assume that the foreign official can't also be

19    charged with promoting an SUA that it can't itself be

20    charged with.

21              Then that foreign official, as Bodmer discussed

22    although it didn't use "foreign official" but it was a

23    prohibited person --

24                  (Counsel overtalking; not reported.)

25              THE COURT:  But it's a pre -- let me stop you.
```

1    The prohibited person in *Bodmer* was a jurisdictional void in

2    the statute as it existed then.  It was not based upon a

3    determination that certain classes of persons should not be

4    prosecuted --

5              MR. LOPEZ:  So the Siriwans --

6              THE COURT:  -- or bribed.

7              MR. LOPEZ:  -- would then be able to have free

8    rein to launder money in our system for bribery.

9              You're basically saying, under your theory, that

10   the Siriwans can come in and use our banking system and

11   promote someone else's bribery and say:  Okay.  No problem.

12   You can become a professional money launderer for any bribes

13   that need to be done in Thailand.

14             THE COURT:  I guess that, you know, if you're

15   going to say that, you can say, yes, they're also free to

16   accept bribes.  Yes, I mean --

17             MR. LOPEZ:  They are not charged --

18             THE COURT:  It was in the bribery context, you

19   know, because, you know, again --

20             MR. LOPEZ:  I'm not charging them with accepting

21   bribes.  For example, this is what is being charged.  I'm

22   not charging them with --

23             THE COURT:  Let me stop you.  You're repeating

24   yourself.  I'm repeating myself.  I think we both understand

25   our positions.  I'm just telling you the problem I have with

1    your position in this regard.

2         Let me indicate, however, to defense counsel.  The

3    last time I looked, Jittisopa was not a foreign official so,

4    therefore, my concerns that I have in this regard wouldn't

5    extend to her.

6         MR. FRULLA:  She is alleged to be a foreign

7    official --

8         THE COURT:  She's not alleged to be a foreign

9    official.  She's alleged to have assisted a foreign official

10   which is her mother but she's not a foreign official.  She

11   the daughter and she works at these various companies.

12        MR. FRULLA:  Well, she's not alleged to have

13   committed any acts in the United States.  The government may

14   have -- there are no allegations of Jittisopa's conduct in

15   the United States.

16        THE COURT:  I thought there was something -- well,

17   I don't know.  It's not alleged, I understand it, in the

18   Indictment; but I thought there was evidence in the Greens'

19   trial that she came to this country and had meetings with

20   the Greens.

21        MR. LOPEZ:  Yes.

22        MR. FRULLA:  Your Honor, you can't look at the

23   evidence in the Greens' trial.

24        THE COURT:  I understand that, but I can look at

25   the -- you know, again, there's nothing to indicate that

1    she's a foreign official in the -- anywhere, either.  So

2    you're saying that she's not for this or that, well --

3          MR. FRULLA:  I'm just reading what's on the face

4    of the Indictment.

5          THE COURT:  Yeah, but nothing on the face of the

6    Indictment indicates she's a foreign official.

7          MR. LOPEZ:  Right.  And it does do that for

8    Juthamas Siriwan; and let me take a different point of what

9    they said.  They weave this in the supplemental argument.

10   It's direct or it's indirect liability or conduct.

11         The case law is very clear that someone who

12   receives the transaction or initiates the transaction both

13   conduct the transaction for the purposes of the money

14   laundering laws.

15         And there is no direct versus indirect liability.

16   *Moreland*, the case that's all over these briefs, a Ninth

17   Circuit case, says someone was involved in the transaction,

18   was responsible for 1956(a)(2)(A) because they controlled

19   the accounts it went into.

20         So there doesn't have to be -- oh, actually,

21   January 17th, just a couple weeks ago, a case came out

22   called *United States v. Cook*; and I printed up a bunch of

23   copies.

24         It deals with this exact issue where the financial

25   part of the transaction occurred in San Diego by an

1   undercover.  The defendant never stepped foot in the United

2   States for it, and it was still found to be conducting a

3   transaction.

4           So that whole concept of a direct versus indirect

5   just doesn't exist in this world here of liability for

6   initiating, receiving, or taking part in a transaction; and

7   that same goes for -- that's on the money laundering piece.

8           When you get to the aiding and abetting piece,

9   there's a whole other line of case law that says aiding and

10  abetting is not a separate offense, it's just a different

11  theory of liability for the same offense.

12          So we didn't have to allege aiding and abetting at

13  all in our Indictment.  It was embedded in there.  We didn't

14  have to say who was the principal, who was the aider and

15  abettor.

16          THE COURT:  Let me stop you.  I agree with you.

17          MR. FRULLA:  If I may, with Jittisopa, the same

18  concern applies to her under the promotion language because

19  if Your Honor is not accepting the Ginsu-knife theory of how

20  many times can we chop up this bribe into individual

21  transactions, that same rule would apply to her.

22          THE COURT:  I think you're confusing -- my concern

23  is not quite the same as the separate and distinct argument

24  which you make.

25          MR. FRULLA:  I understand that it's a different

1    one; but if you're treating it all as a bribe, then it --

2    it's all one act.

3              THE COURT:  Yes.  But my concern is, again, my

4    focus is on the fact that because Congress has specifically

5    exempted foreign officials from the -- what I consider to be

6    the bribery penumbra that I have trouble with the

7    government's position that they can somehow get around it by

8    charging, you know, money laundering as -- based upon the

9    bribery as the specified unlawful activity when, you know,

10   the foreign official is, you know, can't be guilty of that.

11             And congressional concern is, you know, a

12   situation where one is attempting to prosecute a foreign

13   official.

14             Because, I mean, lord knows that this country

15   would get a little upset if other countries, you know, find

16   that, you know, hey, by sending money to support, you know,

17   pro-democracy elements in some foreign countries, that all

18   the sudden in their opinion the banking system in their

19   country has been violated and, therefore, our foreign

20   officials should be subtract to prosecution in their country

21   for engaging in these types of corruptions of their banking

22   system.

23             I just think that, you know, these are precisely

24   the concerns that Congress had --

25             MR. FRULLA:  I understand.

```
 1              THE COURT:  -- in this regard.  But --
 2              MR. FRULLA:  I agree with you on the status of the
 3     governor.  I agree with you.
 4              THE COURT:  Okay.
 5              MR. FRULLA:  But the other arguments apply to her
 6     daughter, assuming you're not going to treat her daughter as
 7     a government official.
 8              THE COURT:  She's no, to my mind, a government
 9     official.
10              MR. FRULLA:  She still needs to promote.  There
11     still needs to be -- there are two elements of jurisdiction
12     under the Money Laundering Control Act.  There's the subject
13     matter jurisdiction under --
14              THE COURT:  The problem is that, again, insofar as
15     separate and distinct is concern, that is an area which is
16     so complicated because it obviously depends on the crime,
17     et cetera, and the government has thrown in a lot of cases
18     many of which seem to be applicable here, you know.
19              Again, that's why my focus is really on the FCPA
20     and how far, you know, it extends insofar as the
21     congressional protection.
22              Let me just be also -- I mean, we also have the
23     rule of lenity, you know, and the Thai Penal Code as an MLCA
24     predicate and also the court's jurisdiction over Count 1.
25              You know, in other words, does (b)(2) control it?
```

```
 1    Does (f) control 1956?  I mean, there's a lot of complicated

 2    issues in this little motion -- not this little motion, this

 3    big motion.

 4            But, you know, again, I think I may retreat and

 5    just say that, again, maybe I rushed to say that I should

 6    have entertained all these things when I do not know whether

 7    or not Thailand is going to say they have a dominant

 8    interest in this controversy and they will express it in

 9    their response to the question of whether or not they're

10    going to agree to the extradition of the Siriwans to this

11    country.

12            MR. LOPEZ:  Well, Your Honor --

13            MR. FRULLA:  That doesn't change the status issue

14    with the governor.

15            THE COURT:  It doesn't change the status so much;

16    but conversely, however, I mean, my intention at this point

17    in time is just to stay a decision on this until such time

18    as a decision is made on the Indictment aspect.

19            Once the Indictment aspect comes down, I will rule

20    following the -- I can tell you now that if Thailand says

21    it's not going to extradite, I will find that Thailand has a

22    dominant interest in this regard because they will have

23    expressed it to me in no uncertain terms.

24            If they agree to the extradition, then all of the

25    issues are open and that means I'll have to decide them all.
```

1      MR. LOPEZ:  Your Honor, I guess we'll save this

2  argument for another day; but even if Thailand says that

3  they have -- they're not going to extradite, the question

4  for the court isn't whether or not Thailand has a dominant

5  interest.  The question of the court is:  Has Congress

6  clearly expressed its intent; and that is the question for

7  the court; and in this case it has.

8      Their jurisdictional arguments are way out of left

9  field in that there's not one Law Review article, one case,

10  one anything that ever talks about 1956(b)(2) as a hook; and

11  even if it did, even if it did, their argument is that since

12  we didn't charge it directly, which we did by it way, it

13  shouldn't apply.  But we did charge it directly.

14      They're also arguing that this *Yaku* case which

15  says you can't expand beyond the underlying jurisdiction;

16  and if we had charged it directly, then that would be okay.

17      Well, they're not necessarily saying foreign

18  officials can't be charged on it.  They're just arguing the

19  method of which I charged the case.  None of that make

20  sense.

21      THE COURT:  Yeah, but the thing about it in the

22  end, though, basically what we're talking about here is -- I

23  understand that the bribery occurred and, you know, the

24  Greens were sometimes here in this country, sometimes in

25  Thailand to effectuate the bribery.

1          But the money, for example, that was involved was

2    not money that originated in this country.  It was Thai

3    money that was sent to this country and then was sent back

4    in the form of these bribery payments to either Thailand or

5    to other, you know, jurisdictions, international

6    jurisdiction, where the defendants purportedly would gain

7    access to it.

8          But, again, the question really is, insofar as

9    this dominance is concerned, I mean, what are the types of

10   crimes that are charged, what are the interests of the

11   various governmental entities that are involved?

12         MR. LOPEZ:  There's a case on point or several

13   cases on point that we cited that says when Congress has

14   spoken on intent, that's where the buck stops and you don't

15   go to international law and Congress can legislate for us to

16   violate international law.

17         I mean, that stuff is pretty clear.  On the

18   jurisdictional piece of 1956(f) and where that fits in.

19   There's a case that just came out January 17th.  You know,

20   we can include this in a later briefing.  I'd like to bring

21   it to the court's attention and give it to defense counsel.

22         THE COURT:  Sure.

23         MR. LOPEZ:  Two weeks.  Two weeks ago.

24         THE COURT:  Hot off the presses, I understand.

25         MR. LOPEZ:  Javier, should I come this way?

1        THE COURT:  Not through the well.

2             *(Pause in the proceedings.)*

3        MR. LOPEZ:  Got it?

4        And in this case, it talks about defense

5   counsel -- I'm sorry -- defendant is charged with

6   1956(a)(2)(A).  Defendant was part of a -- for lack of a

7   better term -- a sting operation to violate the Arms Control

8   Export Act to buy certain products here in the United

9   States.

10        And the defendant was charged with international

11  promotion, money laundering, based, by the way, on the same

12  exact SUA that transfers both constitute the crime of the

13  SUA and the international promotion money laundering and

14  which is perfectly acceptable; and in this case, defense

15  raised a jurisdictional argument.

16        The jurisdictional argument defendant raised had

17  to do with the amount of money, $10,000, the requirement for

18  1956(f) jurisdiction, saying:  Government, you didn't charge

19  enough money.  These transactions are less than that.

20        The court then looked to 1956(f) and said:  Look.

21  This is the jurisdictional statute when a foreign person is

22  charged with money laundering.  It didn't go to look to see

23  1956(b)(2).  Didn't go anywhere around there.

24        THE COURT:  Well, let me stop you.  I agree with

25  you that it seems to me that (b)(2) is a civil penalty

1    jurisdictional provision.  It doesn't seem to me that that

2    is the criminal -- defines the scope of criminal

3    jurisdiction.  I agree with you on that.

4              MR. LOPEZ:  Yes.

5              THE COURT:  That's the reason I said there's a lot

6    of what you've written I'm somewhat in agreement with.  I

7    just have this fundamental disagreement and the question is

8    how far does my fundamental disagreement go.

9              But conversely, however, it seems to me that, you

10   know, this is an area where, again, I would not feel

11   comfortable reaching final conclusions until I figure out or

12   unless I am informed how the government of Thailand is

13   viewing the situation with their foreign official and their

14   citizen.

15             And once that occurs, then I will feel -- it will

16   force me to address in more detail the myriad issues that

17   have been raised by both sides.

18             Because these are a lot of issues and are

19   complicated; and, again, sometimes discretion is the better

20   part of valor.

21             MR. LOPEZ:  I can't predict how it's going to come

22   out; but I urge and I would think they'll come out in our

23   favor, whatever process they do.  I don't know.  I have had

24   no contact with them on that point.

25             I can tell you this though.  If they come out

| | |
|---|---|
| 1 | against us, I'm going to beg this court to keep an open |
| 2 | mind on -- |
| 3 | THE COURT:  I always have an open mind.  Sometimes |
| 4 | that's the problem.  It goes in one ear and out the other. |
| 5 | My mind is that open. |
| 6 | MR. LOPEZ:  Because, as I said, this thing has |
| 7 | been researched six ways to Sunday. |
| 8 | THE COURT:  I noticed that. |
| 9 | MR. LOPEZ:  And we're right on the law. |
| 10 | THE COURT:  Let me put it this way.  You guys got |
| 11 | paid by the word, obviously, or at least -- |
| 12 | MR. FRULLA:  I wish I did.  I wish I did. |
| 13 | THE COURT:  *(Laughing.)*  All right. |
| 14 | MR. FRULLA:  Your Honor, just one more. |
| 15 | THE COURT:  Sure. |
| 16 | MR. FRULLA:  You're talking about Thailand acting. |
| 17 | There's two ways Thailand can act.  One is -- and Your Honor |
| 18 | has talked about both of them. |
| 19 | One is for the Attorney General to proceed or make |
| 20 | a decision on the NACC's -- National Anti-Corruption |
| 21 | Commission's recommended Indictment. |
| 22 | The other is a decision on extradition.  I guess |
| 23 | you're saying if Thailand does either one, then we're all |
| 24 | coming back? |
| 25 | MR. LOPEZ:  That is not the case, Your Honor.  We |

 1   can submit our extradition request and Thailand should

 2   answer that request.

 3            THE COURT:  Yes.  I would think that Thailand

 4   would answer that request.  The question however --

 5            MR. LOPEZ:  It's not a question of what they do in

 6   Thailand.  We can't be on that schedule --

 7            *(Counsel overtalking; not reported.)*

 8            MR. FRULLA:  Well, sure it does.

 9            THE COURT:  Well, let me stop you.  Let me stop.

10   It depends on what the response is and/or whether or not

11   there is a response.  I can envision a situation where the

12   government makes a request.

13            Is there a deadline or something within which they

14   have to respond?  It might be a situation where they simply

15   don't respond.

16            MR. LOPEZ:  Well, I think that, you know, if

17   that's the case, we wait some period of time and we can all

18   decide what's reasonable and if they haven't responded --

19            THE COURT:  I would also think that -- yeah, I

20   would give them a period of time.  Not that I can force them

21   into anything.  But, you know, I'm interested in, obviously,

22   what the Thai government -- how the Thai government responds

23   to the extradition request and depending on how they

24   respond.

25            But if they do not respond within a certain period

1   of time, it would indicate that it is a difficult issue for

2   them as well and, therefore, then I'll have to make the

3   decision myself, too.

4          But, obviously, I would want to hear from the Thai

5   government as to what their response is to the extradition

6   request.

7          All right?

8          MR. FRULLA:  Thank you, Your Honor.

9          MR. LOPEZ:  Thank you, Your Honor.

10         THE COURT:  Did you fly out here just for this one

11   as well?  I think I'm going to have to share frequent-flyer

12   miles.

13         MR. FRULLA:  We did.

14         THE COURT:  You did?  Okay.

15         MR. FRULLA:  It's an important case.

16         THE COURT:  No, I mean, I agree.  I think this is

17   a very important case in an area which is very, very

18   difficult.  So that's one of the reasons why I want to see

19   what the Thai government does before I go forward.

20         MR. LOPEZ:  Your Honor, I thought would you enjoy

21   my presence here.

22         THE COURT:  I do.  I do.  I like you better as the

23   principal rather than the sidekick.

24         MR. LOPEZ:  *(Laughing.)*  Thank you very much.

25         THE COURT:  All right.  Let me just do one thing.

35

 1    When does the government feel that they're going to renew

 2    the extradition request?

 3              MR. LOPEZ:  Your Honor, as expeditiously as

 4    possible.  I can't speak on behalf of the State Department,

 5    however.

 6              THE COURT:  Okay.  Let me do this.  Let me just

 7    set a status conference.  I presume nothing will happen in

 8    six months but who knows.  But if something does happen

 9    earlier than six months, then you guys will let me know.

10              But what I'll do is put this matter back on

11    calendar for July 30th.  Is that a doable date for both

12    sides?  Telephonic.  I don't want you guys to fly out here.

13    It's just a telephonic.  And I want a status report no later

14    than in writing by noon on the 26th of July.  Okay?

15              MR. LOPEZ:  Yep.

16              THE COURT:  Thank you very much, gentlemen.

17              MR. FRULLA:  Thank you.

18              *(At 10:48 a.m. proceedings were concluded.)*

19

20                          -oOo-

21

22

23

24

25

1                              **CERTIFICATE**

2

3          I hereby certify that pursuant to Section 753,

4   Title 28, United States Code, the foregoing is a true and

5   correct transcript of the stenographically reported

6   proceedings held in the above-entitled matter and that the

7   transcript page format is in conformance with the

8   regulations of the Judicial Conference of the United States.

9
    Date:  January 31, 2012
10

11

12

13

14                              /s/  PAT CUNEO

15                              OFFICIAL COURT REPORTER
                                CSR NO. 1600
16

17

18

19

20

21

22

23

24

25