1                    UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3                     HONORABLE GEORGE H. WU

4              UNITED STATES DISTRICT JUDGE PRESIDING

5                              - - -

6
United States of America,          )
7                      PLAINTIFF,   )
                                    )
8  VS.                              )   NO. CR 09-81 GW
                                    )
9  Juthamas Siriwan, Jittisopa      )
   Siriwan,                         )
10                     DEFENDANT,   )
   _____)
11

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  LOS ANGELES, CALIFORNIA

16                 WEDNESDAY, MARCH 20, 2013

17

18

19      _____

20           KATIE E. THIBODEAUX, CSR 9858
             U.S. Official Court Reporter
21           312 North Spring Street, #436
             Los Angeles, California 90012
22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR PLAINTIFF:

 4        U.S. DEPARTMENT OF JUSTICE
          BY:  JONATHAN E. LOPEZ
 5        Room 10116
          1400 New York Avenue, NW
 6        Washington, DC 20530

 7

 8

 9   FOR DEFENDANTS:

10        KELLEY DRYE & WARREN LLP
          BY:  DAVID E. FRULLA
11        -and- DAVID E. FINK
          10100 Santa Monica Boulevard
12        Twenty-third Floor
          Los Angeles, CA  90067
13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1        LOS ANGELES, CALIFORNIA; WEDNESDAY, MARCH 20, 2013

2                          9:18 A.M.

3                          - - - - -

4

5

6        THE COURT:  All right.  Let me call the matter of

7   United States versus Siriwan.  Let me have appearances of

8   counsel.

9        MR. LOPEZ:  Morning, your Honor.  Jonathan Lopez

10  for the United States.

11       THE COURT:  All right.

12       MR. FRULLA:  Good morning, your Honor.  David

13  Frulla and David Fink for the defendant Siriwans.

14       THE COURT:  All right.  We are here in

15  continuation of this matter.  I have seen the

16  supplemental briefs from the parties.  Let me just

17  summarize really briefly the current situation so that

18  when I discuss this matter and counsel discuss this

19  matter it is somewhat clear.

20           The indictment in this matter was filed on

21  January 28th, 2009.  The indictment was placed under seal

22  on the same day, and it was unsealed approximately

23  one year later on January 19th, 2010.

24           The U.S. government made an extradition

25  request to the Thai government on or about or in or
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   around April of 2011.  On May the 30th of 2011, the

2   defendants filed a motion to be allowed to make a special

3   appearance which was ultimately granted by this court on

4   or about August the 4th, 2011.  The motion to dismiss was

5   filed on August 19th, 2011.

6          Hearings were held on November 21, 2011 and

7   also on January 30th of 2012.  At that latter hearing,

8   the court stayed the matter in light of the pending

9   extradition request for the reasons that I stated on the

10  record, a copy of the transcript of which has been filed

11  and incorporated herein.

12         In the supplemental filing, the government

13  points out the current position of the Thai government,

14  and that is that the current request from the U.S.

15  government to the Thai government for the extradition of

16  the two defendants, one of whom, Juthamas Siriwan —— and

17  that is J-U-T-H-A-M-A-S —— is a former Thai government

18  official, and the Thai government indicated in its

19  December 14th, 2012 diplomatic note that its national

20  anticorruption commission intends to file a criminal case

21  against at least Juthamas Siriwan.  And as to the other

22  defendant, the government, that government is currently

23  gathering information in order to proceed against her as

24  well and that the Thai government indicated that it

25  intended to postpone review of the extradition request

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    pursuant to the Extradition Act BE2551, 2008, Article 14,

2    subparts 2 and 4 and also under Article 5, Paragraph 2 of

3    the treaty between the governments of Thailand and the

4    United States.

5            I think I have summarized the procedural

6    matter correctly; is that correct, counsel?

7            MR. LOPEZ:  Yes, your Honor.

8            MR. FRULLA:  Yes, your Honor.

9            THE COURT:  Let me just ask the extradition act

10   that is referred to, is that the treaty, in other words,

11   the Extradition Act BE2551, is that a reference to the

12   treaty, or is that a reference to some other document?

13           MR. LOPEZ:  It is not a reference to the treaty,

14   your Honor.  It is a reference to some other document in

15   Thailand.

16           THE COURT:  So it is a Thai document.

17           MR. FRULLA:  It is Thai law.

18           THE COURT:  All right.  Let me indicate that when

19   I had allowed the defendants to make a special

20   appearance, the reason that the court did so, amongst

21   other reasons, is that I had indicated that I did not

22   feel that the defendants fell within the ambit of the

23   fugitive disentitlement doctrine, and I still feel that

24   way.  But that position really doesn't address the issue

25   that really is here, and that is in the motion to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  dismiss, there are a lot of factors, a lot of issues, a

2  lot of complicated issues to be decided.

3           And one of those issues is this issue in

4  regards to the government's theory, one of the

5  government's underlying theories in this case.  In other

6  words, part of the problem that I had was the problem

7  vis-a-vis, at least as to Juthamas Siriwan, was the fact

8  that she was a -- was at one point in time a Thai

9  government official, and at the point of time during the

10 commission of the alleged crime or crimes herein she was

11 in that capacity.

12          And I had a problem because of the language

13 from the Foreign Corrupt Practices Act which specifically

14 excludes bribery crimes involving foreign governmental

15 officials within that scope of that statute.  But, then,

16 the government came back and argues that, well, you know,

17 we are actually going under the money laundering statute

18 and, therefore, if she was acting in violation of Thai

19 law irrespective of whether or not she was a government

20 official, she could still be prosecuted.  And there is a

21 big dispute as to whether or not that is true, and I

22 won't get to the answer to that question at this point

23 but I understand there is a problem.

24          But, conversely, however, let me ask since the

25 government of Thailand is now going to be apparently

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    prosecuting her and also the other defendant under Thai

2    law, if they are found not guilty in the Thai

3    proceedings, wouldn't that vitiate that basis for the

4    government to go forward with its case against the

5    defendants in this case?

6           MR. LOPEZ:  No, your Honor, it would not.

7           THE COURT:  Why not?

8           MR. LOPEZ:  For a couple of reasons, your Honor.

9               First, what they are being charged with under

10   Thai law is, in fact, separate than what they are being

11   charged with here, and what we have here are

12   two different FCPA's -- I'm sorry -- two different SUA's,

13   one under the FCPA --

14          THE COURT:  When you use those, let's not use

15   these abbreviations.  Let's use the full term so we can

16   understand fully what you are saying.  So what is the

17   SVA?

18          MR. LOPEZ:  Specified Unlawful Activity.

19   Two separate bases for which they have violated our money

20   laundering laws through the use of our financial system.

21   The first basis that we are saying, defendants, you have

22   abused our financial system by promoting the Greens'

23   Foreign Corrupt Practices Act violations.

24          THE COURT:  But if that is the bribery --

25          MR. LOPEZ:  Yes, your Honor.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          THE COURT:  -- then, aren't they excluded from the

2     Foreign Corrupt Practices Act because of that fact?

3          MR. LOPEZ:  By the structure of the Foreign

4     Corrupt Practices Act, they can't be charged

5     substantively with that offense, but there is ample Ninth

6     Circuit case law which says that you can be charged with

7     the money laundering laws and not the underlying

8     specified unlawful activity, and, specifically, United

9     States v. Lemieux says that.

10              As well, since Castle was established in

11    1991 --

12         THE COURT:  Well, but in those -- any of those

13    Ninth Circuit cases involved foreign nationals?

14    Although, frankly, this gets back to our discussion from

15    January the 30th of 2012 where we hashed this out ad

16    nauseum but didn't come to a conclusion.  We agreed to

17    disagree.  But, conversely, the major point that I bring

18    about this is that -- and this is actually a question

19    that actually is really being addressed to the defense,

20    and I am only looking at you because you stood up.

21              The question is that, well, why would I even

22    try to resolve any of this stuff because, again, a lot of

23    the things we are talking about here will be resolved in

24    the criminal proceeding in Thailand.  In other words, if

25    they are, for example, found to have violated Thai law,

 1   then the government, you know, the government clearly can

 2   go forward with the indictment insofar as that aspect of

 3   its case is concerned.

 4          So why would I try to resolve these things

 5   here when, you know, I may have to determine whether or

 6   not the defendants are guilty of some act under Thai law?

 7   And I really do not -- as much as I think I am a

 8   brilliant jurist, and I have been called that by at least

 9   one pro per -- I don't understand how I could attempt to

10   discover what Thai law is, the ins and outs of Thai law

11   to make that type of determination.

12          And I also think it would be very difficult

13   for the government to present the evidence of a violation

14   of Thai law.  I mean, they probably could eventually if

15   they had lots and lots of time.

16      MR. LOPEZ:  Your Honor, under 1956(a)(2)(a), we

17   don't actually have to prove that the Thai law violation

18   happened.  We have to show in this statute that they

19   intended to promote that violation from occurring.  I

20   think the Lazarenko case is probably the most case on

21   point for both issues that the court raises, one, whether

22   the foreign officials in that capacity can be charged

23   with statutes involving the bribery issue, and, two, with

24   the interplay of foreign law violations and the

25   sufficiency of an indictment at this stage.  And on the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    point on the first issue of --

2          THE COURT:  Let me just indicate to government

3    counsel sometimes you may want to accept the court's

4    position without acceding to it if it will at that point

5    in time gain you the step over the hump which you are

6    currently on rather than trying to swing and hit the ball

7    out of the ballpark in which case you may not be able to

8    convince the court at this point in time that you can do.

9          MR. LOPEZ:  Yes, your Honor.  Hint accepted.

10         THE COURT:  All right.  Let me hear from defense

11   counsel.

12         MR. FRULLA:  Thank you, your Honor.

13         THE COURT:  You can sit down.  You don't have to

14   stand up as long as you speak into the microphone.  Or

15   you can stand up if you want.  Or you can do an in

16   between.

17         MR. FRULLA:  As an initial matter, I'm sorry I

18   look a little kind of mixed and matched.  My clothes

19   never made it hear.  I did, my papers did.

20         THE COURT:  I thought that was just the new

21   fashion.

22         MR. FRULLA:  It is a combination of Mr. Fink's

23   resort wear and what I could get at the Philadelphia

24   airport.

25         THE COURT:  So I should sanction Mr. Fink is what

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    you are saying?

2        MR. FRULLA:  Presumably, yes.  We had that

3    discussion.

4            Getting back to the question of whether, what

5    the court should do here, whether the court should stay

6    its hand.

7        THE COURT:  I have already stayed this matter.

8    The question is should I unstay it.

9        MR. FRULLA:  Continue to stay.

10           It is unclear as an initial matter what the

11   United States is going to do or when, if the Thai process

12   takes five years whether there will still be an

13   indictment out there, whether there will still be any

14   sort of --

15       THE COURT:  Let me stop you.  It is clear what the

16   government wants.  It is clear that the government wants

17   me to keep the indictment, you know, because the question

18   I had asked was what happens if five years from now the

19   Thai government is still doing what it is doing and

20   hasn't brought a prosecution, et cetera, et cetera.

21   Their position is keep the indictment.  Don't dismiss the

22   indictment.

23           They are saying it is not a question of court

24   convenience.  It is a question that they have the right

25   to issue the indictment, and this court doesn't -- well,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    obviously, the court has the power to dismiss an

2    indictment, but they are arguing the reasons that the

3    court has previously given for thinking about dismissing

4    the indictment really shouldn't be applied because they

5    involve things that are up to the executive in this

6    particular situation because the foreign affairs

7    interests of this government are carried out by the

8    executive not by the judiciary even though a lot of

9    judges feel that they can issue things that concern those

10   areas.

11        MR. FRULLA:  There is -- this isn't all about the

12   executive branch, your Honor.  First of all, there is the

13   Castle and Gebardi cases which provide a basis for the

14   court to construe the domestic law, the FCPA, to

15   determine whether the nature of the conduct amounts to

16   the same violations.

17             The government has, from the very beginning,

18   reveled in the fact that it is the same conduct in each

19   charge.  It just amounts to different elements.  So there

20   is in play that same Castle, Gebardi argument that is

21   fully in the court's wheelhouse about whether or not

22   to --

23        THE COURT:  Let me just ask you this.  How do you

24   get around the government's argument that insofar as

25   their money laundering charge is concerned, the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    government, this government can prosecute persons who

2    violate their own country's laws and in the course of

3    that violation get funds and abuse this country's banks

4    and banking laws by transferring the money through our

5    banking system.  Why can't they proceed in that way, and

6    not be barred by, allow the arguments that your clients

7    are making insofar as the other areas are concerned.  And

8    I am not even going to address those other areas at this

9    point in time because that one seems to be a matter in

10   which the government can attempt to proceed in this case.

11        MR. FRULLA:  Two elements.  The first is -- and

12   these are two points that we have raised in detail in the

13   briefs.  The first is the due process and the fair

14   warning and the lenity of arguments relating to the scope

15   of what it means to promote the crime.  We have made the

16   arguments about promotion.

17        THE COURT:  But the problem I even have with that

18   is that we do not know what the full scope of the crimes

19   are because, you know, I mean, it really will depend upon

20   in part what happens in Thailand insofar as these charges

21   are concerned.

22        MR. FRULLA:  And the second argument is the

23   international overlay which is not necessarily a

24   constitutional argument here.  It relates to the

25   jurisdiction to prescribe.

1          There is, essentially, it is a subject matter

2     jurisdiction question as Justice Scalia has repeatedly

3     described it and taken pains to describe it as which is

4     something that the court gets to consider.

5          It is a matter of comity, not the comity of

6     the courts whereby judges decline to exercise

7     jurisdiction over matters more appropriately adjudged

8     elsewhere, but rather one might be determined

9     prescriptive comity, respect sovereign national nations

10    afford each other by limiting the reach of their laws.

11    It is exercised by legislatures when they enact their

12    laws.  I believe that is what you see.  And it is also

13    the courts are to assume that it has been exercised when

14    they come to interpret the scope of the laws.

15         THE COURT:  Let me stop you.  It seems to me

16    there really isn't any dispute that a country can outlaw

17    and make criminal violations or abuses of its own banking

18    system.  And, you know, it seems to me that there is no

19    real major constitutional issue insofar as whether or not

20    this country can criminalize the use of its banking

21    system as a means of either sheltering or promoting or,

22    you know, in some way, enabling persons who violate the

23    laws in their own country which this country obviously

24    doesn't have a right to define what those, that country's

25    laws, when those country's laws are being violated, but,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  you know, if there is such a violation, to say that you

2  cannot use our banking, banks here to do that.  You know,

3  there is no constitutional prohibition for that I would

4  think.

5       MR. FRULLA:  And, at this point, there is

6  two arguments that I am making that aren't strictly

7  constitutional.  The first is the point that the court

8  made in January, 2012 that what we are talking about here

9  in this specific instance is an indivisible act

10  essentially of bribery that the use of the banking system

11  was merely a transmission of funds that was the bribe,

12  that the bribe was effected by virtue of the transmission

13  of these funds, at least, allegedly, and that that

14  indivisibility, originally, the court had talked about

15  that in terms of the Castle case but it also applies in

16  the international law realm where there is basically

17  two layers of the international law consideration.

18            Again, the Clark case in the Ninth Circuit has

19  explained that that is not of a constitutional dimension.

20  It is more the subject matter jurisdiction.  The first is

21  whether that was subject matter, whether there is some

22  basis for jurisdiction to prescribe.  Here, indeed, we, I

23  guess, concede with the government's point that 1956(f)

24  does provide some basis for territorial jurisdiction over

25  the defendants to the extent that the indictment alleges

1    some acts here in the country but that is not it.  That

2    is not where it ends under international law.

3          There is the second step, step two, which you

4    see more and more in the case law at we move from the

5    90's into the 2000's as we get more and more into these

6    international crimes especially as we try to combat

7    terrorism and piracy and the other things that are kind

8    of the scourge of the 2000's unfortunately.

9          Two layers of argument there that apply.  The

10   first is the most fundamental, and we did a deep drive

11   into this in our briefing, this matter of organic

12   jurisdiction, that there are some acts that countries,

13   sovereigns, reserve for themselves to prosecute.  Here,

14   this indivisible bribe, this payment of funds,

15   essentially, allegedly a corrupt official act is

16   something that Thailand has the authority under

17   international law to prosecute.  It is something that

18   Thailand has reserved to itself in Section 9 of its penal

19   code.

20          And we explain in detail the legislative

21   history where that was called superseding jurisdiction.

22   You can either look at that as a limit on the territorial

23   principle -- the Microsoft Supreme Court case talked

24   about there can be -- the presumption of no

25   extra-territorial jurisdiction can be limited by a

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1    statute which has happened here, but the extent of that

 2    limit can be a matter for the court to consider, the

 3    extent of that limit, or else you can look at it in terms

 4    of this issue of the second step of reasonableness which

 5    I believe we would submit does include the organic

 6    jurisdiction point.  It also includes all the

 7    reasonableness factors that are set forth in Section 403

 8    of the restatement of foreign relations.  And that is

 9    something that both the Supreme Court and the Ninth

10    Circuit have considered in depth.

11            And if you look at the cases --

12        THE COURT:  Let me stop you.  Wouldn't a

13    resolution of even that issue require more or less

14    factual determinations which would also be included in

15    the Thai case as well?  In other words, the Thai criminal

16    case may hit on these things.  For example, I mean, at

17    this point in time, we do not know all the ins and outs

18    of the purported criminal conduct that the defendants are

19    accused of, and so, therefore, we don't know to what

20    extent it, where we can cut off, I suppose, what was

21    bribery from what was something else in terms of criminal

22    activity.

23            So, you know, even if I were to say I am going

24    to entertain this, it seems to me that, you know, I would

25    be -- would have to go into, you know, factual issues

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    insofar as what the conduct was.

2              So why would I do that at this point in time

3    for a motion to dismiss when as I indicated for the

4    reasons why, even though, you know, I said a lot of the

5    other things I said at the January 30th hearing, I, in

6    the end, stayed the matter.

7         MR. FRULLA:  There is, and the McDonnell Douglas

8    case out here that we have cited does look to the

9    proposition that at some point some things are not fit.

10   The courts in the U.S., here, what we have is an

11   indictment that speaks, if you look at it, the 14th

12   through the 18th word past the caption is Foreign Corrupt

13   Practices Act.

14             If you look at all the allegations, they all

15   involve payments whether they are called partial payments

16   or commissions.  There is a limited scope to this

17   indictment that the court is able to judge from its face

18   based on the nature of the charges, based on the theory

19   that has been presented, based on the international law

20   overlay.  This is ready for decision at this point, your

21   Honor.

22        THE COURT:  Let me hear response from the

23   government.

24        MR. LOPEZ:  Well, your Honor, there is a lot

25   there, and maybe if the court --

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          THE COURT:  Well, I am not doing anything else

2    this morning.

3          MR. LOPEZ:  I pretty much disagree with everything

4    he said.

5          THE COURT:  You mean every word including the a's

6    and the the's?

7          MR. LOPEZ:  Those can stay in.  Those can stay in.

8    Let me start with reverse order, I guess, with what

9    defense is claiming is mostly an FCPA.

10         Under the law when you charge 1956(a)(2)(a),

11   you do not have to allege the elements of the SUA.  You

12   do not have to prove specified unlawful activities.  You

13   don't have to prove the specified unlawful activities,

14   but what we did, the government, is decided to be more

15   expansive in our indictment to satisfy the notice

16   requirements of what makes an indictment sufficient.

17         So we went into that length of describing the

18   specified unlawful activities, that is the violation of

19   the FCPA and the violations of Thai law so defendants

20   would be put adequately on notice which is one of the --

21   which is the crux of the purpose of the indictment.

22         Now, if the defense feels that they don't have

23   enough notice in order to plead double jeopardy or face

24   the charges, then a bill of particulars is what they

25   should be seeking.  But that doesn't come until after

```
 1    defendants are arraigned and discovery is provided

 2    because discovery may also provide that adequate notice.

 3           And I think the court hit the nail on the head

 4    when the court said, look, I don't -- I am paraphrasing

 5    for you, your Honor.

 6           THE COURT:  Thank you for dumbing it down for me.

 7           MR. LOPEZ:  Yes.  It is the line of what the

 8    conduct is and what would constitute promotion and where

 9    the jurisdiction lies are things that you really can't

10    see on the face of a motion to dismiss.

11           And, indeed, the Ninth Circuit has held you

12    should not.  There are several cases in the Ninth Circuit

13    dealing with the money laundering statutes.  It says

14    things like if you are going to allege concealment, money

15    laundering, whether or not and defendants have fought

16    this and the case is United States v. Heinz, the

17    defendant said, look, there is not enough in this

18    indictment for me to see how it was concealed, what the

19    nature of the charge is and the Ninth Circuit said the

20    indictment is sufficient on its face.  It alleges the

21    elements correctly.  It provides the notice.  And that is

22    really what an indictment is supposed to do.

23           And the theory behind it and what evidence is

24    going to support concealment, that comes at trial.  So I

25    understand the court is saying that you want to see what
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1   Thailand has to say about all this, but, regardless of

 2   what Thailand says, these types of issues are issues for

 3   trial.  Same with jurisdiction.  There is case law on

 4   that that says, look, when you start getting into

 5   jurisdiction as to what conduct occurred where, that is a

 6   trial issue.  That is not a motion to dismiss issue.

 7          So what the government would submit to the

 8   court is to continue to stay this motion.  Frankly, if

 9   the government had its way, it would say motion denied,

10   you can revisit later when the defendants, if and when

11   the defendants appear in court.  That is what the

12   government's preference would be.

13          Short of that, it would stay the motion to

14   dismiss because the court is right, a lot of the issues

15   that the defendants are raising are issues for trial not

16   issues for motion to dismiss.

17       THE COURT:  Actually, I am not quite saying that.

18   I am saying a lot of these issues are ones where I think

19   this court would be well advised to see what the Thai

20   government does as to its own nationals before I

21   interject myself into this consideration.

22       MR. LOPEZ:  That information obviously can't hurt

23   the process.  So the government, taking the court's hint

24   previously, is not going to try and convince the court

25   otherwise at this stage.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          With respect to the international law claims,

2     you know, organic jurisdiction is not a recognized form

3     of jurisdiction in international law.  The defendants are

4     basically saying, look, Thailand has claimed ownership

5     over this bribery issue.  We own it.  No other country

6     can prosecute our officials for bribery, and that just

7     doesn't exist.  The Ninth Circuit says that under US v.

8     Richardson that each country has its own right to

9     prosecute, and just because one country is prosecuting

10    the same crime doesn't mean that another country, meaning

11    the U.S., can't also prosecute that same crime which, by

12    the way, your Honor, we don't believe we are doing.  We

13    believe we are prosecuting a different crime, but let's

14    leave that for a different point.

15         And if you think about it, it would, if you

16    follow the defense logic, it would lead to absurd

17    results.  Every country would go out there and say we own

18    this, we own this, we own this for each statute.  And,

19    then, international law as we know it of countries

20    protecting their own interests would be in complete

21    disarray.  So I submit that the defense arguments on

22    organic jurisdiction and overplay of international law

23    just don't work here.

24         The money laundering laws have been around

25    since 1986.  1956(a)(2)(a), the statute charged in this

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    indictment has been prosecuted numerous times.  There is

2    not one court that has said on international law grounds,

3    government, you are not going to proceed under money

4    laundering prosecution including when it is a foreign

5    official.  There have been two instances of money

6    laundering charges against foreign officials involving

7    bribery.  One is the Duperval case out of Miami which the

8    court is aware of.

9         THE COURT:  There wasn't any motion to dismiss.

10        MR. LOPEZ:  There wasn't.

11        THE COURT:  So it is kind of like, well, you have

12   waived that.

13        MR. LOPEZ:  Well, Lazaranko, in this circuit, in

14   the Ninth Circuit, did have a motion to dismiss the

15   indictment or the indictment was reviewed later.

16        THE COURT:  Well, there is a difference there too.

17        MR. LOPEZ:  Well, I am happy to discuss my views

18   on Lazaranko if the court would like, but at the end of

19   the day, I agree with the court that this motion should

20   be denied if not stayed.

21        THE COURT:  All right.  Anything else from either

22   side?

23        MR. FRULLA:  Well, this isn't a notice case.  I

24   think we have made that point clear, and we had probably

25   the middle of the briefing in this very protracted

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    briefing.

2         THE COURT:  It is also not a Speedy Trial Act

3    issue either.

4         MR. FRULLA:  Correct.

5         They did go ahead and plead this for whatever

6    reason.  They did plead it.  They put it on paper.  They

7    put it in the indictment.  They alleged it.  It is there

8    so we are not in a notice issue.  We are in an issue

9    where the court treats this almost as what used to be

10   called the state law demurrer.

11        And the court gets some latitude to evaluate

12   the words in the charging document with common sense and

13   with an overlay against the law.  And that is what we are

14   asking your Honor to do.  And the second point on

15   Lazaranko --

16        THE COURT:  Let me just stop you.

17        You know, I think both sides concede that this

18   situation is somewhat unique, and there really isn't any,

19   you know, law on all fours in this situation.  Therefore,

20   you know, especially when there are very serious issues,

21   it behooves the court to be somewhat cautious in this

22   regard.  And, again, it seems to me that what will happen

23   in Thailand will inform this court as to what this

24   court's proper response should be to the motion to

25   dismiss.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1               And I do not feel that it is my obligation to

2      do that which can be done through a prosecution in

3      Thailand as to Thai law.  You know, it behooves me to

4      wait and see even for no other reason that I can say, at

5      least, they are experts in Thailand as to what Thai law

6      is.  Whereas, I don't think there are experts here in

7      this country with a similar expertise as to what Thai law

8      is vis-a-vis, you know, people here and people in

9      Thailand.

10          MR. FRULLA:  I -- three points there.

11              The first is it is possible that Thailand may,

12     the defendants may be acquitted.

13          THE COURT:  If they are acquitted --

14          MR. FRULLA:  But is there issue preclusion there?

15          THE COURT:  No.  There is clearly no issue

16     preclusion there.

17          MR. FRULLA:  I am not following the court's

18     argument then.  Because if there is no issue preclusion,

19     what do you learn?  When the government is saying --

20          THE COURT:  For one thing, what we will learn.  I

21     presume that -- well, let's do this:  If the Thai

22     government finds the defendants not guilty of any Thai

23     crimes, I would say, then, the government's argument that

24     it can use the Foreign Corrupt Practices Act to say that

25     when a person violates the laws of their country and

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    thereafter uses our banking system in some way, they are
 2    going to be precluded from making that argument because
 3    the Thai government will have said they haven't violated
 4    Thai law in which case I don't understand what the basis
 5    for them to attempt to say, well, no, Thailand, you are
 6    wrong, your laws were actually violated, you just are too
 7    stupid to realize it, I don't think that is going to fly.
 8         MR. LOPEZ:  Your Honor, at the risk of making the
 9    waters muddier than they need to be, let me say this.  I
10    think if Thailand acquits the defendants, I think I -- I
11    can understand how we would want to reevaluate, all of
12    us, what happens with respect to the second specified
13    unlawful activity alleged in the indictment, that is
14    specific violations of Thai law.
15         The government submits that the indictment
16    would still stand, but that could be briefing for another
17    day.  With respect to the FCPA, regardless whatever
18    happens in Thailand, the government says that the FCPA,
19    the other specified unlawful activity, still stands
20    because that is a promotion of United States law.  So,
21    for example --
22         THE COURT:  What happens if it turns out that the
23    Greens were the ones who said we will deposit the money
24    here.  No one in Thailand or the defendants never said
25    use the U.S. banking system at all.  It was just the
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    Greens who did that.  Is there a SUA there?

 2         MR. LOPEZ:  Yes, there is, your Honor.

 3         THE COURT:  Why?

 4         MR. LOPEZ:  Because for a number of reasons.  One,

 5    it doesn't matter, under conspiracy law, under aiding and

 6    abetting law, under principal liability with the

 7    Pinkerton theory, it doesn't matter who made the

 8    decision.

 9         THE COURT:  Well, the problem is if that isn't

10    part of your case, though, it seems to me why wouldn't I

11    agree with the defendants that either, one, it is part of

12    the intrinsic element of the bribery which is they get

13    the money, and so, therefore, why wouldn't I agree with

14    them as to that point?

15         MR. LOPEZ:  Because, your Honor, that is --

16         THE COURT:  Let me indicate this.  I might agree

17    with them on that point, and that is one of the reasons

18    why I would still stay this matter because, again, I

19    would like to find out about this information.

20         MR. LOPEZ:  Sure, your Honor.  And the question

21    you ask is a factual question.  I am not saying right now

22    whether the United States has that evidence to proffer or

23    doesn't have that evidence to proffer.

24         THE COURT:  I don't expect the United States to

25    have that, and I am not requiring the government to have
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    that information now.  All I am saying is that at the

2    time I ultimately decide the motion to dismiss,

3    hopefully, that information will be obtained, and I

4    perhaps would agree with the government that the

5    government doesn't have to get that information now in

6    order to fight off the motion to dismiss.

7         MR. LOPEZ:  Right.  That is information to come at

8    trial for a renewed motion.

9         THE COURT:  But, again, that is part of the reason

10   why I would be more comfortable seeing what happens in

11   the criminal prosecution in Thailand because a lot of

12   this information, at least, if nothing else, it will have

13   been developed, and even though there may not be

14   collateral estoppel as to that issue, hopefully, what

15   that would simply mean is that the information would be

16   available to both sides.

17         All right.  Yes.

18         MR. FRULLA:  Your Honor, I think what the United

19   States is saying is that we could wait for Thailand.  I

20   could be grayer.  You might even get to be gray.

21         THE COURT:  No.  I will have no hair at that point

22   in time.  I will look like -- well, I don't want to --

23   because I think he may just shave his head because it is

24   a better look for him.

25         MR. FRULLA:  It goes with the jacket.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1          RIGHT2:  I am going to stick with that story, your
2    Honor.
3          MR. FRULLA:  A long time from now, what the United
4    States is telling you is this case isn't going to get any
5    simpler.  And it may very well be that Thailand might
6    acquit these defendants.  There is a basis in the Thai
7    extradition law to refuse extradition on that basis on
8    double jeopardy, but that isn't going make the United
9    States go away.  We could end up -- our clients could
10   still end up on the Interpol red list, they won't be able
11   to leave, and nothing is resolved.  Nothing is get to
12   going easier.
13         THE COURT:  Well, actually, I disagree.  It
14   couldn't get any harder than it is.  In other words, no
15   matter what happens, it will get easier.  But this is the
16   question I have, and this is the question that I would
17   ask the government and I will close with this question to
18   the government.
19             At some point in time, you know, if the Thai
20   government doesn't do anything, in other words, doesn't
21   go forward with this criminal prosecution, everything is
22   in limbo, it seems to me that the defendants' arguments
23   will become more strong if for nothing else that they are
24   arguing the ramifications of just simply having the
25   indictment out there.  They are talking about the
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    Interpol stuff and other things.

2              At some point in time, you know, the court is

3    going to have to say, well, I guess I am going to have to

4    either fish or cut bait.  I will either have to fish or

5    cut bait although I think I prefer to lie in the sun.

6    But be that as it may, let me ask the government, you

7    know, one year from now, five years from now, nine years

8    from now, 10 years from now, at what point in time can I

9    finally say this case has been on my docket long enough

10   and I will make a decision one way or the other.

11        MR. LOPEZ:  Your Honor, technically speaking, this

12   case should stay on the docket as long as it stays on the

13   docket for the defendants to get here.

14        THE COURT:  Ever?

15        MR. LOPEZ:  Or for the government to make some

16   evaluation of its position in the case whether it can

17   move forward, whether it still has the evidence.

18        THE COURT:  You know what your response should be,

19   and I thought you would do this, but that is not the

20   response.  The response probably should be is that, what

21   was it, the movie, Return of the King, the Hobbit movie,

22   where, you know, the guy gets on his horse and just

23   before the gates, and he says there may come a time when

24   the courage of mankind will fail but not today.

25        MR. LOPEZ:  Today is not the day, your Honor.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  So what you are saying is maybe some

 2   point in time in the future, perhaps, but we don't need

 3   to decide at this point in time when that day is.  It

 4   will come and perhaps eventually but not today.

 5          MR. LOPEZ:  Yes.  As the court says, not this day.

 6          THE COURT:  I tell you what I am going to do

 7   however.

 8              This case is not going to be speeding no

 9   matter what.  So what I will do is this.  I will continue

10   staying this matter, and that is as to the motion to

11   dismiss and this case, et cetera.

12              I will set a status conference a year from

13   today, and we will see what the status is at that point

14   in time.  And what I will require, however, is a year

15   from today, would be -- well, the nearest date would be I

16   will put it for March the 20th.  And what I want is by

17   the 10th of March a joint filing just to indicate what

18   has happened, if anything, in the interim, and I want

19   either the -- well, one party or both parties, at least

20   one party, to contact someone in Thailand, somebody from

21   the Thai government or the Thai prosecution just to

22   simply indicate what is the status, you know, of the

23   prosecution, is it still being investigated, is it

24   scheduled for trial, has the trial taken place and it is

25   it is on appeal.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              In other words, I presume all that information

 2   would be matters of public record, and so it wouldn't be

 3   too difficult to obtain that information.  So just give

 4   me a joint document by the 10th of March indicating what

 5   the status is at that point in time.

 6              All right.  Anything else, gentlemen?

 7         MR. LOPEZ:  No, your Honor.  Not from for the

 8   United States.

 9         MR. FRULLA:  Thank you for your time, your Honor.

10         THE COURT:  Hopefully, you will find your clothes.

11         MR. FRULLA:  I think they are home.

12         THE COURT:  They just sent them back?

13         MR. FRULLA:  They were supposed to send them from

14   Philadelphia to LA, but, for some reason, they are

15   sending them to my house.  Go figure.

16         THE COURT:  Where is your house?

17         MR. FRULLA:  In Washington.

18         THE COURT:  Off the record.

19         (Proceedings concluded.)

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1                         CERTIFICATE

 2

 3

 4   I hereby certify that pursuant to Section 753, Title 28,

 5   United States Code, the foregoing is a true and correct

 6   transcript of the stenographically reported proceedings held

 7   in the above-entitled matter and that the transcript page

 8   format is in conformance with the regulations of the

 9   Judicial Conference of the United States.

10   Date:  April 2, 2013

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA